McAlpin v. Cassidy.

ROBERT M. McALPIN AND ANOTHER v. THOMAS CASSIDY AND ANOTHER.

Every agency carries with it, or includes in it, as an incident, all the powers which are necessary or proper, or usual, as means to effectuate the purposes for which it was created, and none others.

In this respect, there is no distinction, whether the authority given to an agent is general or special, express or implied.

If the agency arises by implication from acts done by the agent with the tacit consent or acquiescence of the principal, it is deemed to be limited to acts of

a like nature ; if from the general habits of dealing between the parties, it is deemed to be limited to dealings of the same kind.

An agent employed to receive payment, is not, in general, clothed with authority to compound the debt, or to commute it for something else, as, for example, his own debt ; but can only receive it in money ; unless his particular employment confers the authority, or it can be implied from the general usage of business, or the habits of dealing between the parties.

See this case for circumstances under which the judgment was reversed for error in overruling the motion for a new trial, on the ground that the evidence did not warrant the jury in finding that the agent had authority to receive payment by commutation for his own debt.

See this case for evidence which was held to be sufficient to warrant a finding that a certain person was held out to the world by the plaintiff, as his partner.

The admission or declaration of an agent binds his principal, only when it is made during the continuance of the agency, in regard to a transaction then depending.

The refusal to reverse, where improper testimony has been admitted and excepted to, on the ground that the party was not prejudiced thereby, is only applicable where the case is made out by competent evidence, beyond a question.

Appeal from Travis.  Tried below before the Hon. Thomas H. DuVal.

Suit by the appellants, late merchants, partners, trading in the city of New Orleans, under the firm, name and style of R. M. McAlpin & Co., against the appellees, to recover the sum of $915 20, for goods and merchandize, furnished, sold, and delivered in August, 1853.  Answer by defendants, that they had paid the amount sued for, to D. W. Field, whom they alleged to have been the agent and partner of plaintiffs, and to B. F. Hill, whom they allege to have been the agent of the plaintiffs, to receive the same.  The answer specified the date and character of each payment, as afterwards proved.

The testimony on the trial was as follows :

The plaintiffs read in evidence the deposition of James McCord, who testified that he was acquainted with R. M. McAlpin & Co.; that Cassidy & Finnin purchased goods of plaintiff, consisting of groceries, wines, liquors, &c., from 1852 to 1853,

in New Orleans; the goods were taken from the store of plaintiffs, and put on board one of the Harris & Morgan's line of steamers, bound to Port Lavaca. Witness was warehouseman at the time, and his drayman took the goods to the steamer. The goods were ordered for defendants by Ben. F. Hill. Witness thinks that R. M. McAlpin himself sold the goods. R. M. McAlpin and Peter S. Miller composed the firm of R. M. McAlpin & Co. Witness has frequently seen Ben. F. Hill in the store of the plaintiffs and has often seen him introduce strangers to plaintiffs with a view of selling them goods.

The plaintiffs then introduced A. J. Hamilton, who testified that Cassidy acknowledged to him, that they had received the goods, but at the same time said that they had paid Hill and Field for the goods.

The defendant then read in evidence the deposition of Ben. F. Hill, who testified that he was acquainted with all the parties to this suit ; that he was also acquainted with D. W. Field ; was informed that said Field died in November or December, 1853. Said Field was before and at the time of his death, in the employ of plaintiffs, as their agent in collecting money and enlarging their business in Texas. The said Field was also a member of the firm of Ben. F. Hill & Co., of Port Lavaca ; and while in said firm, it was understood that said Field should remain in the employ of R. M. McAlpin & Co., to influence the trade of the South and West to the house of plaintiffs. Witness has known said Field to collect money due plaintiffs ; has never known him to announce himself as being interested in said house, any further than as a clerk ; and has never known him to arrange accounts in any other way than the collection of the same in money. Witness knows said Field to have been the agent of plaintiffs, with power to solicit orders for said firm, and to settle and arrange all claims due them. Witness last saw said Field in November, 1853, and he was in the employ of said firm. Said Field informed witness in regard to the claim against the defendants, that he

had collected two hundred dollars on account, that he was sat-
isfied that Cassidy, one of the defendants, was considerably in-
volved ; and he placed the balance of the claim against de-
fendants in the hands of witness and authorised him to settle
said claim in any way that would be advantageous to the
house in New Orleans. Said witness drew three drafts on the
defendants in favor of Hugh H. Haynie, Francis Dieterich
and George Hancock, amounting to two hundred and sixty
dollars in all. The firm of Ben. F. Hill & Co. was composed
of witness, William G. Hubert, D. W. Field and James McAl-
pin. James McAlpin travelled with said Field, and assisted
him in collecting and arranging claims due plaintiffs. James
McAlpin was a brother of Robert M. McAlpin, but had no in-
terest in the house or R. M. McAlpin & Co., further than his
being their agent. Robert M. McAlpin and Peter Miller com-
posed the firm of R. M. McAlpin & Co.

Defendants then introduced the deposition of E. Nash, which
proved that he was acquainted with the parties to the suit,
and also acquainted with D. W. Field ; was of the opinion that
Field was agent of plaintiffs. Field was in Austin in the
Spring or Summer of 1853, soliciting orders for the house of
R. M. McAlpin & Co. The firm of B. F. Hill & Co., Lavaca,
consisted of Ben. F. Hill, Wm. G. Hubert, James McAlpin,
and, as the witness understood, R. M. McAlpin & Co., of New
Orleans. Witness understood that James McAlpin and D. W.
Field were agents for plaintiffs. James McAlpin was a bro-
ther of R. M. McAlpin, but had no interest in the house of R. M.
McAlpin & Co. The firm of R. M. McAlpin & Co. is dis-
solved, but knows no reason for dissolving the partnership.

The defendants then introduced Hugh H. Haynie, who tes-
tified that he loaned Ben. F. Hill one hundred and thirty dol-
lars in December, 1853, and in February, 1854, he called on
Hill for the money, and Hill gave him an order on Thomas
Cassidy for the amount. Witness presented the order and
Cassidy gave his note to witness for the amount, after deduct-

ing an account which, he witness, owed Cassidy. Witness told Cassidy that it was an individual debt between him and Hill ; that Hill was a member of the firm of Ben. F. Hill & Co., Port Lavaca, Texas. Witness understood that said Hill was, in some way, connected with some large house in New Orleans, but don't know what house.

The defendants then introduced F. Dieterich, who testified that he saw Field in Austin in 1853. Ben. F. Hill informed witness that he, Hill, and Field were engaged in business together in Port Lavaca. Hill owed witness fifty dollars and thirteen cents for goods. Hill gave witness an order on Thomas Cassidy for the amount, and Cassidy settled the order. Understood from Field that he, Field, was connected with a house in New Orleans.

The defendants then introduced John J. Grumbles, who testified that about the 1st of April, 1853, he went to New Orleans from Austin in company with Ben. F. Hill and Dr. Joseph W. Robertson, and that on their arrival at New Orleans, Hill invited them to accompany him to the house of plaintiffs, which they did and were then introduced by Hill. Hill and the plaintiffs conversed together in the presence of witness in the most friendly terms about business matters in Texas, and the relation existing between them appeared to be intimate and friendly. While witness was at the store of plaintiffs, Hill and R. M. McAlpin retired to the counting room and conferred awhile together. Hill carried over with him to New Orleans a considerable amount of money, part of which he paid over to McAlpin. Witness soon after left New Orleans and went to Alabama, and on his return to the former place found a letter from Hill, requesting him to call and see plaintiffs. He did so, and plaintiffs proffered to sell him some groceries, saying it made no difference about the money, as he could settle that in Texas with Hill, or with Ben. F. Hill & Co., of Port Lavaca. Plaintiffs apparently had great confidence in Hill, and expressed their satisfaction at having connected with their house

a man so well known and influential as Capt. Hill. Witness asked them if they were well acquainted with Hill, as he was surprised to see that they had so much confidence in him. Hill took with him from Austin about twenty-five hundred dollars, and paid R. M. McAlpin & Co. about one thousand dollars. Cassidy had a claim against the Government for three or four hundred dollars, which he placed in Hill's hands for collection. Hill said he had lost the claim, for some time, and intended to get a duplicate of it, but afterwards found the original. Witness did not know anything particularly about the matter, except what Hill told him before they left Austin, about the 1st April, 1853, that he had collected the money on it. Hill told witness at the time that he had got some money from the Treasury, but witness did not know how much. Witness understood that the Government claim, or draft, belonged to Casssidy, but did not know what Hill was to do with it, or the money collected thereon. From the general bearing and the relations, which seemed to exist between Hill and the plaintiffs in New Orleans, witness believed, and Hill so represented, that he was interested in their house, and they told witness at the time they proposed selling him goods, that whatever Hill would do would be right.

Defendants then introduced John T. Shanks, who testifies that he was well acquainted with the plaintiffs, was also well acquainted with D. W. Field; and that said Field was the fully authorized agent of plaintiffs; has known him to act as agent, and plaintiffs to recognise his acts; has known plaintiffs to deny a receipt given by Field in settlement of one of their claims : it was after Field's death; Plaintiffs afterwards admitted the receipt. Plaintiffs had lost money by Field. They furnished the principal part of the stock to Ben. F. Hill & Co., of Lavaca, and lost money by said firm. Plaintiffs failed in business.

Defendants then introduced John Horan, who testified that he bought goods in 1853 of R. M. McAlpin & Co., through

Ben. F. Hill, and sent the money for said goods to said firm by A. H. Barnes. At that time he thought Cassidy in easy circumstances, but afterwards embarrassed ; that Cassidy had enough to pay all his debts in 1853 and 1854.

John T. Price was then introduced, who testified that in 1854 he was deputy Sheriff, and had executions against Thomas Cassidy, and returned them at the request of the plaintiffs in execution. Witness regarded Cassidy as being good for his debts at that time.

W. L. Hill was then introduced, who testified that on the 1st of April, 1853, he went to Galveston in company with Ben. F. Hill, Capt. Grumbles and Dr. Robertson. Hill had money along ; dont know how much, but got eight hundred dollars from the Treasury, but dont know what for. On their way to New Orleans, heard Hill speak a good deal about his connexion with some house there.

Dr. Joseph W. Robertson was then introduced. who testified, that about the middle of April, 1853. he was in the store of plaintiffs in New Orleans in company with Hill : understood that Hill was collecting and drumming for plaintiffs. Plaintiffs apparently had great confidence in Hill. He seemed to be connected in business in some way with plaintiffs.

J. A. Burdett was then introduced and testified that Hill owed him about twenty dollars for horse and buggy hire, and settled the sum by giving him an order on Thomas Cassidy, which order was settled by an account which witness owed Thomas Cassidy.

George Hancock was then introduced and testified that Hill was indebted to him in the sum of seventy dollars, and settled by giving him an order on Cassidy. Hill gave him the order in the first part of 1854 ; it was an individual debt between witness and Hill. Hill tried to get witness to give him an order for groceries for some house in New Orleans.

Defendants then read in evidence the following receipt to-wit :

" Received, Austin, Nov. 15, 1850, of Thomas Cassidy, an " audited draft for three hundred and sixty-seven dollars and " seventy-five cents which I promise to collect or return to " him whenever demanded.

(Signed)                    " BEN. F. HILL."

J. W. Robertson also further testified that, some time during the Fall Term of the District Court of Travis county, 1855, he was present at a conversation between Cassidy and Hill. Hill said that plaintiffs' suit was a rascally one ; that their whole debt had been paid, and that he, Hill, intended to stay and testify in the case, and intended to set the whole matter right.

William Patterson testiffed that he was present at a conversation between Hill and Cassidy, in which Hill said that the suit between plaintiffs and defendants was a rascally one on the part of plaintiffs ; that they had been paid their entire debt. Witness said he was barkeeper for defendants, and that in 1853 and 1854 they did not have much money. When defendants dissolved, Cassidy wound up the business for Cassidy & Finnin.

The Court, of its own motion, charged the jury as follows :

This action is brought by the plaintiffs to recover of the defendants a sum of money alleged to be due and owing for goods which they had furnished the defendants. The defendants plead that, if the goods were furnished as charged, the amount due therefor has been paid. The defendants endeavor to show that they have settled the amount for which they have been sued, or a portion of the same. by payments made by them to Ben. F. Hill, and D. W. Field, as agents of the plaintiffs. So far as the evidence may conduce to show any such payments, the question arises as to whether Field and Hill were rightfully acting as the agents of the plaintiffs. and authorized to receive and receipt for moneys due them, settle and arrange debts, &c. An agency may be shown to exist, as well, by implication and presumption, as by express authority. It may

Mc Alpin v. Cassidy.

be deduced from facts and circumstances, as they are proved to exist in any particular case; from acts done by the agent with the tacit consent or acquiescence of the principal; from the general habit of dealing between the parties, and from other circumstances. It is a rule of law that, where an agency is presumed, or implied, from facts and circumstances, it should not be construed to extend beyond the obvious purposes for which it was apparently created.

In determining the authority and power of an implied agency the jury will look to the intention of the parties as deduced from the nature and circumstances of the particular case as shown by the evidence before them. Acting on these general principles, the jury must determine from the evidence in the case whether an agency existed or not on the part of Field and Hill, and, if so, whether the extent and power of their authority permitted or authorised them to do those acts by virtue of which the defendants' claim to be entitled to credits on the amount sued for by the plaintiffs.

An agent who has authority to receipt for and receive payment on account of his principal, is not ordinarily entrusted with the power to receive it in anything but money, although a different presumption might be raised from the particular nature of the agent's employment, the general usage of the business in which he is acting, or the habits of dealing between the parties.

If the jury believe from the evidence that the defendants have paid the amount sued for, either to the accredited agents, or to a partner of the plaintiffs, they then will find for the defendants; or they will find a verdict for the plaintiffs for such amount as they may find from the evidence to be due and unpaid.

At the request of the defendants, the Court gave the following additional instructions:

1st. That, when the admissions or statements of a party are introduced in evidence against him, all that he said at the

time of making such admission or statement on the same subject, is to be taken as evidence by the jury ; and if it be shown from the evidence that the defendant Cassidy admitted the receipt of the articles sued for, and at the same time stated they had been paid for, the jury will consider his entire statement as in evidence before them.

2nd. That if the jury believe from the evidence that Ben. F. Hill and Field were the agents of the plaintiffs, with general power to act as such in Texas, in soliciting orders for groceries, receiving payments, settling with persons indebted to plaintiffs, to compromise when deemed necessary with plaintiffs' debtors, and, in short, with power to act in all things connected with the business of the plaintiffs as the plaintiffs themselves might have done, then whatever was done by either of said agents would be binding upon the plaintiffs, and the statements of such agents are to be taken by the jury as evidence against said plaintiffs.

3rd. That where a party is agent only for the collection of money due his principal, the agent can only receive money for the debt so due, but if the agent has general powers to collect the debt, to settle and compromise it, as, in his discretion, said agent may deem best, then whatever said agent may do will be binding upon the principal.

4th. That when a party holds out another as his agent, such party will be bound by the acts of such party, so represented as being the agent, whether in point of fact he be agent or not. And if plaintiffs represented Hill and Field as their agents in Texas, they were bound by the acts of either of them, acting as such agent.

5th. That if it appear from the evidence that Ben. F. Hill was one of the parties interested in the house of R. M. McAlpin & Co., then whatever he did in the business of said house would be binding upon the firm, and his statements and admissions evidence against said firm.

6th. That the mere receipt of an audited draft on the Treas-

ury does not raise a liability on the part of the party receiving it until the money is collected, unless the party is so negligent in collecting, that the claim becomes barred.

7th. Before the legislative enactment of 1855, there was no mode provided for obtaining duplicates of lost audited drafts.

8th. That if the jury believe from the evidence that the demand here sued for has been paid to said Hill and Field, or either of them, acting as the agent of plaintiffs, or to said Hill if he was interested in the house of McAlpin & Co., they will find a verdict for the defendants.

The plaintiff asked the Court to give the following instruction :

Where a claim of a principal is settled by an agent by taking the debts of the agent, and making himself the debtor, it devolves upon the party seeking to take advantage of the settlement, to prove that the principal acquiesced in the settlement. If any of the payments in this case were made to the agent in debts against him, and the defendant had knowledge of the fact when it was paid, it then devolves upon the defendants to show that the agent had authority to substitute his debts in place of the defendants'.

The Court gave this charge, with the addition that it was not necessary to produce positive proof of such authority, but that it might be proved by facts and circumstances from which it might be deduced.

These were all the instructions given and refused.

The jury found a verdict for the plaintiffs for nine dollars and forty-five cents, for which judgment was rendered. Motion by plaintiffs for new trial overruled ; and appeal by plaintiffs.

There was a bill of exceptions, as follows :

Be it remembered that on the trial of the above stated cause the defendants offered to prove by John J. Grumbles, that Hill told him about the first of April, 1853, that he, Hill, had an audited draft on the Government of Texas, belonging to Thomas Cassidy, which he, Hill, had collected, to which testimo-

ny plaintiffs objected, because said testimony was irrelevant, illegal and hearsay testimony ; and because defendant failed and neglected to prove that the money collected on said draft had been paid over to plaintiffs, or that there was any agreement between Hill and the plaintiffs, or any one else, that it should be paid over to them, plaintiffs, and because Ben. F. Hill is the only witness competent to prove said fact, if at all ; which objections were overruled by the Court, and the evidence permitted to go to the jury and plaintiffs excepted.

Defendants offered to prove by J. W. Robertson, that some time during the Fall Term, 1855, of the District Court of Travis county, he was present at a conversation between Cassidy and Hill, in which Hill said that plaintiffs' suit was a rascally one, and that their whole debt against defendants had been paid, to which testimony plaintiffs objected, because it was hearsay testimony ; because, at the time said Hill made said declarations, defendants failed to prove that said Hill was agent of plaintiffs ; that said declarations were made subsequent to the dissolution of the partnership of R. M. McAlpin & Co. ; and because said declarations were not made in the presence of plaintiffs or their agent or attorney ; and because said Hill did not say how, when and to whom the money was paid; which objections the Court overruled, and permitted the evidence to go to the jury, and plaintiffs excepted.

The defendants offered to prove by William Patterson, that he was present at a conversation between Ben. F. Hill and Thomas Cassidy during the Fall Term, 1855, of the District Court of Travis county, in which Hill said that plaintiffs' suit was a rascally one, and that they had been paid their whole debt, to which testimony plaintiffs objected for all the reasons set forth in their objections to J. W. Robertson's testimony ; which objections were overruled by the Court ; the evidence permitted to go to the jury ; and plaintiffs excepted.

The defendants then offered in evidence the following receipt, to wit :

" Received, Austin, Nov. 15, 1850, of Thomas Cassidy an

" audited draft for three hundred and sixty-seven dollars and " seventy-five cents, which I promise to collect or return to him when demanded.

"BEN. F. HILL."

To the reading of which said receipt plaintiffs objected, because said receipt was given long before the goods were purchased from plaintiffs by defendants ; because said receipt shows on its face to have been an individual transaction between Ben. F. Hill and Thomas Cassidy, and because defendants failed to prove that there was any agreement between Ben. F. Hill and the plaintiffs and defendants or any one else, that the money collected on the audited draft mentioned in said receipt should be paid over to plaintiffs on account of defendants ; which objections the Court overruled, and permitted the receipt to go to the jury, and plaintiffs excepted. The plaintiffs objected to the testimony of Ben. F. Hill, Hugh H. Haynie, F. Dieterich, J. H. Burdett and George Hancock so far as it related to the payments made by defendants to them in settlement of the private debts of Ben. F. Hill, without introducing proof to show that said Hill had authority from plaintiffs to settle their claim in that way ; the Court overruled said objection and permitted the evidence to go to the jury, and plaintiffs excepted.

· *Hamilton, Chandler* and *Walton,* for appellants.

*Hancock & West,* for appellees.

WHEELER, J. There were two principal questions contested at the trial ; 1st, whether Hill was the agent of the plaintiffs ; 2nd, whether, as agent, he had authority to receive payment of the debt of his principal in satisfaction of his own individual debts. The decision of the case turned mainly on the latter question ; and the verdict and judgment affirm that he had

such authority. There is no question that Field was the general agent of the plaintiffs. He appears to have had authority for soliciting, receiving and forwarding orders upon their house, collecting monies due them, and promoting generally the extension of their business. This appears to have been the general scope of his authority ; and the evidence was, perhaps, sufficient to authorize the jury to conclude that Hill had a like agency and authority. This however is the utmost, which the evidence respecting his general authority can be claimed to have established. The question then is, whether it was within the scope of his authority, as such agent, to accept satisfaction of the debt of his principal in the payment of his own debts. And it is clear that, without the consent of his principal, express or implied, it was not. His authority as a collecting agent, gave him no right to change the security of his principal for the debts, or to make himself the debtor to the principal for the like amount in lieu of the persons who owed the debts, without the consent of the principal, express or implied, to that effect. (Story on Agency, Sec. 413, 99.)

There is no evidence of any express authority, or assent, on the part of the plaintiffs, to any such arrangement ; or of any usage of trade, or of any course of dealing between the parties, from which such authority might be implied. There is nothing in the evidence to warrant the belief that the agent had authority to receive payment otherwise than in the ordinary mode of business ; and that is, ordinarily, to receive it in money only: (Story on Agency, Sec. 98, 99, 181 : Robson v. Watts, 11 Tex. R. 764.) There may be circumstances which will vary this duty. But there are none such in this case. The same general principle pervades all cases of agency, whether general or special ; that is, that the principal is bound by all the acts of his agent within the scope of the authority which he holds him out to the world to possess. But when the agent exceeds the scope of that authority, no act of his is binding on his principal. A general agency properly exists where there is a

delegation of authority to do all acts connected with a particular trade, business, or employment.    But such an agent can no more bind his principal, when he transcends the scope¹ of his employment, than can a special agent whose authority is limited to a single act.    Every agency carries with it, or includes in it, as an incident, all the powers which are necessary, or proper, or usual, as means to effectuate the purposes for which it was created, and none other.    In this respect there is no distinction, whether the authority given to an agent is general or special, express or implied.    In each case it embraces the appropriate means to accomplish the desired end ; and is limited to the use of those means.  If the agency arises by implication, from acts done by the agent with the tacit consent or acquiescence of the principal, it is deemed to be limited  to acts of a like nature ;  if from the general habits of dealing between the parties, it is deemed to be limited to dealings of the same kind ; if from the employment of the agent in a particular business it is in like manner, deemed  to  be limited to  that particular business.   " And the authority must be implied from facts " which have occurred in the course of  such employment, and " not from mere argument, as to the utility and propriety of the " agent's possessing it.   If it arises from an authority to do a " single or particular act, the  agency is  limited to the appro- " priate means to accomplish that very act, and the required " end : and the implied agency stops there.  In short, an implied " agency is never construed to extend beyond the obvious pur- " pose for which it is apparently created.   The intention of " the parties, deduced from the nature and circumstances of the " particular case, constitutes the ground of  every exposition of " the extent of the authority ; and when that intention cannot " be clearly discovered, the agency ceases to be recognized or " implied."   (Story on Agency, Sec. 87.)   It is upon this principle that it is held, that an  agent employed to receive payment, is not, in general, clothed with authority to compound the debt, or to commute it for something else, as his own debt :

but can only receive it in money, unless his particular employment confers the authority, or it can be implied from the general usage of business, or the habits of dealing between the parties. This is the well settled doctrine of the law; and it is obviously founded in reason and justice.

The only evidence of an express authority to Hill to collect the debt or receive payment is found in the testimony of Hill himself, to the effect that Field, after collecting a part, placed the balance of the claim in his hands, telling him that he was satisfied that Cassidy, one of the defendants, was considerably involved, and authorized him to settle the claim in any way that would be advantageous to the plaintiffs. It cannot be pretended that this gave the authority claimed for Hill, of using the claim to pay off his own various indebtedness, whenever and however contracted, even if Field had been empowered by the plaintiffs to confer such authority. The attempt seems to have been to justify the assumption of authority by Hill, and the extraordinary mode of settling the debt due the plaintiffs, on the ground that Cassidy was in failing circumstances. But if it were so, the obvious duty of Hill, under the authority from Field, was to take measures to secure the ultimate payment of the debt. The authority went to that extent and no further ; unless, at least, it were proved that the other disposition made of it was most to the advantage of the plaintiffs. But the attempt to justify the assumption of authority on that ground, appears to be unfounded in point of fact, as well as in law. The proof is that Cassidy was, at that time, considered solvent ; and there is no evidence that his co-defendant, who was jointly liable for the debt, was in failing circumstances. But it would make no difference as respects the authority of the agent, if both were in failing circumstances and the plaintiffs were in danger of losing their debt ; since the mode of settlement adopted was not in accordance with the ordinary mode of business under the circumstances, and there is no evidence of any usage of trade, or business habits of the parties,

or any authorization or assent by the plaintiffs, express or implied, to such an arrangement.

It was further attempted to prove that Hill was interested in the house of plaintiffs as partner. But in this there was a failure. The evidence did not warrant the supposition that he was otherwise interested with the plaintiffs, or that they held him out to the world as otherwise interested, than as an agent, in the language of one of the witnesses, collecting and drumming for the plaintiffs. But if it were in proof that he was a partner, the principle, as respects his authority to make such a settlement of a debt due the firm, is the same. A partner is deemed the general and accredited agent of the firm, and is authorized to bind the other members by his acts or contracts which are within the scope and objects of their partnership. When he exceeds those bounds, his acts are no more binding upon the firm, than are the unauthorized acts of any other agent, binding upon his principal. He has no right, in general, to apply the debts due the firm to the payment of his individual debts ; and therefore such payment will not bind the firm.

The charge of the Court, after stating certain principles of the law of agency, with general accuracy, concludes with an application of the law to the case, thus : " If the jury believe " from the evidence that the defendants have paid the amounts " sued for, either to the accredited agents, or the partner of " the plaintiffs, then they will find for the defendants," &c. This charge evidently assumes a state of the case more favorable to the defendants than the facts warranted. And the same may be said of instructions given at the instance of the defendants. But it is unnecessary to enter upon a more particular examination of the rulings of the Court upon the instructions asked by the parties respectively ; as the judgment must be reversed upon other grounds. And it only remains to notice the point reserved in the bills of exceptions, respecting the admission of improper evidence.

It clearly was error to admit evidence of the declarations of Hill, made after his agency had ceased, and when they constituted no part of the *res gestae*, and were but hearsay.   The admission or declaration of an agent binds his principal only when it is made during the continuance of the agency, in regard to a transaction then depending.   " It is because it is a " verbal act, and part of the *res gestae*, that it is admissible at " all ;  and, therefore, it is not necessary to call the agent him- " self to prove it ;  but whenever what he did is admissible in " evidence, then it is competent to prove what he said about " the act while he was doing it ;  and it follows, that where his " right to act in the particular matter in question had ceased, " the principal can be no longer  affected by his declarations, " they being mere hearsay." (1 . Greenl. Sec. 113 ;  Story on Agency, Sec. 134, et seq.)

Hill was himself a competent witness, and did, in fact, testify upon the trial ; and the declarations which he made, which were deposed to by the witnesses, were clearly inadmissible.   It is said by counsel for the appellee that the admission of the testimony did not prejudice the plaintiffs, and is therefore immaterial ; because the jury did not find, in accordance with it, that the entire debt was paid.   In such a case as this, it is impossible to say what influence the testimony may have had upon the minds of the jury.   If the case were made out for the defendants, by competent evidence, beyond a question, there might be propriety in holding that the admission of this testimony did not afford a ground for reversing the judgment.   For it might then be said that, had the testimony been excluded, the jury could not legally have returned a different verdict. That cannot be said in the present case.   Had there been no error in the rulings of the Court upon the trial, the judgment must have been reversed on the ground that the verdict was contrary to the law and the evidence.   There was other evidence improperly admitted, which is also reserved ; but which we need not particularly notice ; as the reason why it ought to

to have been excluded will be sufficiently apparent from the view we have taken of the law of the case.

We are of opinion that the judgment be reversed and the cause remanded for further proceedings.

Reversed and remanded.