## Q. GARNER v. H. BUTCHER ET AL.

(Case No. 2640.)

1. PAYMENT — CONFEDERATE MONEY.— Payment to an agent in Confederate money, where it was being used and passed in business transactions as money, was a valid payment, and an agent to collect could receive such notes in payment unless forbidden by his principal.

2. PRINCIPAL AND AGENT — PAYMENT.— Payment of a note to an agent in notes of other persons is not binding on the principal in the absence of proof of ratification by him.

3. ACQUIESCENCE.— Silence of the principal from 1861 to 1868, owing to the war and the disturbed state of the country afterwards, he being in a distant state, cannot be regarded as acquiescence in the acts of the agent performed during the war, where the principal repudiates such acts as soon as informed of them.

4. PRACTICE — PARTIES.— The wife is a proper party to a suit to foreclose the vendor's lien on a note, given by her husband for land deeded to her, and may properly be included in the decree of foreclosure, but it is error to render judgment against her for the debt, or for costs.

5. EXCEPTION TO CHARGE OF THE COURT.— An exception to the charge of the court which does not state the point of objection will not be noticed on appeal where no counter charge is asked on the subject, or the ground of objection indicated in the assignment of errors.

ERROR from Collin. Tried below before the Hon. Alex. Berry, Special Judge.

The facts are stated in the opinion.

*Throckmorton & Brown*, for plaintiff in error.

*Walton, Green & Hill*, for defendant in error.

WALKER, P. J.— This was a suit brought by Q. Garner, the plaintiff in error, against H. Butcher and his wife, on a promissory note given for the unpaid part of the purchase money of two certain tracts of land sold and conveyed by the former to the defendants, to recover the full amount thereof with interest, and to enforce the vendor's lien on the land. The note was dated March 30, 1861, due twelve months after date, for the sum of $500, payable to G. R. Yantes, as agent of Quarles Garner, the plaintiff, and reciting that it was for the last payment on said tracts of land bought from said plaintiff; it was signed by the defendant H. Butcher. The plaintiff alleged that said tracts of land were sold to said Butcher by his, plaintiff's, agent, George R. Yantes, and that at the time of the execution of said note, which was made payable to said G. R. Yantes, as agent for petitioner, said Yantes, as agent for the plaintiff, executed and delivered a deed to said land to Malinda Y. Butcher, the wife of defendant H. Butcher; by amended petition plaintiff alleges that the note does not express any rate of interest, and that it has been in the possession of the defendant, so that in the original petition he could not accurately describe it.

Plaintiff alleged that he is the legal and equitable owner of said note; that the indorsement upon the back of the note, as follows: "Received on the within note $400, November 30, 1861. Q. Garner, per G. R. Yantes, agent,"

was made by said Yantes upon the receipt by him of certain. promissory notes which were received by him without any authority from the plaintiff, and which never came to the hands of the plaintiff. And he further alleged that the other indorsement was made by some person to plaintiff unknown, who was wholly unauthorized by plaintiff, and that no payment of said note has ever been made to plaintiff or his said agent, G. R. Yantes, except the notes paid as aforesaid.

The defendants pleaded a payment made by them of said note to Yantes, by payment of a certain promissory note of $400, on one McWhirter, and the residue of the amount of the note, by payment in Confederate money.

On the trial the note described in the petition with the indorsement of $400 as a credit was introduced in evidence, also a deed to the land, and it was admitted the note was given for a part of the unpaid purchase money of the same. The evidence showed that the land of Garner was sold to Butcher through the agency of Yantes; that the latter took the note payable to himself as agent of the plaintiff. That Yantes retained the note up to and partly during the war. The testimony is conflicting in respect to the disposition which was made of it by Yantes. There was testimony to prove that Yantes received promissory notes to the amount of $400; and, also, that the balance remaining due on the note was paid in Confederate money. There was conflicting testimony as to the payment of the balance of the note in Confederate money. The defendant, Butcher, testified that the note was paid as above stated and delivered up to him. Yantes testified that he received about $300 or more in promissory notes, which he described by amounts, and the names of their makers, corresponding with receipt of one Patillo, and also some Confederate money, for which he entered a credit of $400. That being garnished by the Confederate States receiver he delivered said note here sued on, together with said notes received in payment and the Confederate money also, to said receiver. He also testified that the plaintiff had never authorized him to receive the notes nor the

Confederate money from Butcher, nor did the plaintiff ever receive the notes and Confederate money so paid to witness. That the $400 paid as stated by him was the only payment received by him, and that he never saw the note after it was surrendered to the Confederate States receiver until it was produced in this suit. The surrender of the notes, Confederate money, etc., was made December 28, 1861, as per receipt of T. A. Patillo, Confederate States receiver, which was exhibited by the witness, at which time the plaintiff resided in Kansas; and that the surrender was made under a writ of garnishment from the Confederate court at Tyler, served on him, requiring him to answer what property he had belonging to alien enemies. Patillo's receipt was read in evidence by the plaintiff, dated 28th December, 1861, as follows:

"Received of George R. Yantes the following effects belonging to Quarles Garner as shown by his answer, to wit, the sum of $450.10, and also the following notes: One on H. Butcher, $500, credit by $400 — $100; one on J. H. Hardwicke, $36.37; one on J. S. Robinson, $262.50; one on W. B. Blalock, $58.

　(Signed)　　　　　"T. A. PATILLO, Receiver C. S."

There was testimony concerning an alteration by erasure of indorsements originally made on the note. The indorsement thus alleged to have been erased, witness Craig testified could be discovered by using a glass. It was as follows: "Received on this note $100, February the 4th (or 24th), 1862. T. A. Patillo, C. S. Receiver, by " (somebody "agent," whose name cannot be read). That over these words thus erased was written, "Paid the within note in full to G. R. Yantes, December 30, 1861." This conflicting testimony had relation to the disputed fact, whether the defendant Butcher had paid to Yantes or not the entire amount of the note, or $400 of it only.

It appeared from the evidence that Yantes, up to the time of making the deed of the land to the defendants, was acting as agent for the plaintiff for the sale of the land, and that the transaction was effected through his agency; that Gar-

ner was in correspondence with Yantes as his agent. A letter dated March 10, 1861, to him was read in evidence, the purport of which was to advise with him concerning the terms on which the sale should be made, viz.: To accept Butcher's offer of $1,000 for the land; to take $500 down and $500 in twelve months, if he could do no better; desiring him, however, to do the best he could for him; and if he had not already sold the land, to take the first-named offer of Butcher, provided it should be well secured by note, with interest from date, "if he thought best." The letter discussed the expediency of, and advised with Yantes, as to his sending a check or not, in view of the embarrassed condition of the country arising from the secession of Texas from the Union; or whether it would be best for him to come for the money. Also was mentioned the expediency of taking two mules from Butcher in the trade, and of his coming for them, etc. The letter then concludes as follows: "I want you to take everything into consideration, and if you think best, take Mr. Butcher's first offer; if not, take the last offer. Do the best you can. I would like to have the money as soon as possible."

Yantes testified that he received the first payment in money — five hundred dollars specie; that a bill of groceries bought of Butcher may have been settled in that way; that witness had sold plaintiff a horse for $90 or $100, which was taken out of the first money. Verdict of the jury "for the plaintiff against the defendants, Butcher and wife, $193.08⅔, as balance due on the note given as part payment for land described in deed from Garner to M. Y. Butcher, it being the principal with interest from maturity of note, and no recourse on Yantes." Judgment against the defendants, H. Butcher and M. Y. Butcher, for said amount with ten per cent. interest, with decree to enforce the vendor's lien, with order of sale, execution, etc. The plaintiff moved for a new trial, and, his motion being overruled, appealed to the court of appeals.

The court in its charge to the jury, among other instructions, instructed the jury as follows, viz.:

Paragraph 5th: "If Yantes gave up the note sued on into the possession of the defendants, Butcher, it is evidence that Yantes considered the debt paid to him, and he then became solely responsible to his principal for the amount due on the note. An agent may do this if he chooses so to do, and become responsible to his principal for the amount, but whether the agent does undertake to do this is a question of fact for the jury, under all the circumstances of the case in proof before you."

Paragraph 6th: "A principal may commit the whole management of his business without limit to the discretion of his agent, and if he does so, the honest acts of said agent in the exercise of said discretion are not the subject of revision or correction in any court, but the principal must abide by the acts of his agent in whom he has reposed such special trust and confidence. But whether there was this unlimited committal of the whole business to the discretion of the agent is a question of fact for the jury."

The plaintiff excepted to the foregoing instructions, and asked the court to instruct the jury to the effect as follows:

1. That the note being made payable to Yantes as agent of Q. Garner made it the property of the plaintiff, and the defendant, in dealing with said agent in reference to the note, was bound to take notice of the agency.

2. That Yantes could not bind the plaintiff by accepting as payment notes of other persons as payment of the $400 indorsed upon the note.

3. That if no other payments had been made to Yantes than the notes of other persons, that plaintiff is entitled to recover the amount of the note.

4. "Authority given to Yantes by plaintiff to receive property in part payment for his land when sold, and to do the best he could for him, would not authorize his agent, after having sold the land and taken a note for the purchase money, to receive in payment of such note, other notes or property. A promissory note in the hands of an agent cannot be discharged by paying to the agent anything but lawful money, unless the owner of the note authorized the agent

to receive other than lawful money." All of which instructions the court refused to give, and the plaintiff excepted, and assigns as error the giving of the charge before recited as instructions given, and the refusal to give the last named instructions, which the plaintiff requested to be submitted to the jury.

The charge of the court embraced in the fifth paragraph above quoted contains a proposition that is erroneous, and was calculated to influence the jury to an incorrect conclusion upon the issues between the parties. An agent may, it is true, by doing acts in the course of his employment beyond the authority given to him, become responsible to his principal for the amount of the loss he may have occasioned thereby; but it does not follow that third persons who have dealt with him in the transaction are exempted from liability, or that the unauthorized acts of the agent in the transaction are validated by reason of the agent's liability to his principal; whether or not they are validated depends upon other considerations than that the agent may have seen proper to transcend his authority, and thereby assume liability to his principal. "The same general principle pervades all cases of agency, whether general or special; that is, that the principal is bound by all the acts of his agent within the scope of the authority which he holds him out to the world to possess. But when the agent exceeds the scope of his authority, no act of his is binding on his principal. . . . In this respect there is no distinction, whether the authority given to an agent is general or special, express or implied." McAlpin v. Cassidy, 17 Tex., 462. " The principal is not bound by the unauthorized acts of his agent, but is bound where the authority is substantially pursued, or so far as it is distinctly pursued." Story on Agency, sec. 170. The instruction which was given, that the agent might deliver the note to the defendant, and become solely responsible for the debt, and consider it paid, if he chose to do so, surely was calculated to convey to the jury the idea that such a discretion was within the authority and power of the agent, and if he did do so, that the act, so far as the defend-

ant was concerned, was valid and binding on the principal, and therefore any arrangement or satisfaction made with Yantes would operate to satisfy *pro tanto* the debt.

The several instructions asked by the plaintiff and refused, may be all considered together. If the first proposition were not exactly and technically correct, nevertheless, in the application of a proper rule of law to the evidence in this case, it may be said to have presented substantially a correct instruction on the main and leading idea embraced in it. It may not be strictly correct, as an abstract proposition, to say that in a note payable to A. B., as agent for C. D., that A. B. is not the legal owner of it, with right to sue, collect and transfer; but however that may be, abstractly considered, yet the note not only shows on its face that the beneficial interest was apparently in the plaintiff, but as between the parties to this transaction, the evidence shows that they were all conversant with the rights of the plaintiff to the proceeds of the note, and that it was given for his benefit, and held in trust for that purpose by the payee.

"Payment by the maker will be valid as to third persons only when it is *bona fide* made, without any knowledge of facts which justly impair or destroy the rights of the holder. If, therefore, the maker has notice at the time that the holder has no title to receive the money, and, *a fortiori*, if he knows that he is receiving it in violation of his known duty and trust, the payment will not be held to be valid or obligatory as to the parties really interested." Story on Prom. Notes, sec. 386.

And so the payment even of a bill of exchange which has been indorsed in blank, made by the acceptor, is not always protected by law; but if paid under circumstances which establish a want of good faith on the part of the acceptor, the payment will be nugatory. Story on Bills of Exchange, sec. 416.

Applying this principle of law to the facts of this case, it seems to follow that the maker could not make a payment to Yantes which would be binding upon Garner, if the pay-

ment made was of a character which would be inconsistent with Yantes' authority as agent to collect the debt. The payment in the notes of other persons was at the same time a substitution of other obligations for the note of the defendant, and also operated to release, to the extent of the amount thus paid, the plaintiff's lien upon the land which he had sold to the defendant. The defendant must be held to have known that Yantes was thus accepting such payment in violation of his trust, however well it may have been intended.

The fourth instruction asked by the plaintiff stated the facts of the cases to which it was intended to apply as fully in favor of the defendant as their proper interpretation allowed; there was nothing in the evidence which tended to show that Yantes had greater authority given to him than to collect the note; indeed, there remained nothing more to be done. There was no testimony which tended to show that any authority was given to substitute securities, or to compound or compromise the debt. Therefore, the first proposition and sentence in the fourth instruction is correct. The next proposition in the fourth instruction is not, however, unless qualified. The proposition is, " that a promissory note in the hands of an agent cannot be discharged by paying to the agent anything but lawful money, unless the owner of the note authorized the agent to receive other than lawful money." This does not allow the owner to authorize the acceptance of anything else than " lawful money." The proper rule, with its limitations, is stated in Rodgers v. Bass, 46 Tex., 506. The result of the discussion there was to hold that, in the absence of special instructions to an agent to collect in gold or silver currency, a payment to the agent, in bank-bills, or other currency generally taken and used in the payment of debts, and current in business transactions as money, would satisfy the debt. Id.

 The second and third instructions asked by the plaintiff stated correctly the law applicable to the case.

The agent has no authority to sell, or barter, or exchange

the note to the debtor, or to any one else, for drafts or bills of exchange. Rodgers v. Bass, 46 Tex., 506; McAlpin v. Cassidy, 17 Tex., 450.

" A trustee or agent, with power simply to collect, cannot, in general, receive payment in anything but money. Nor will a payment to him in anything else be binding upon his principal, or operate to discharge the debt, unless made or received by authority of his principal, express or implied. If the debtor pays to a known agent in anything other than money, unless by the authority of the principal, either express or implied from the usual course of business or the particular usage of trade, the principal may, notwithstanding such payment, recover the amount from the debtor." Robson v. Watts, 11 Tex., 768. Citing Story on Agency, secs. 430, 98, 181, 413; Chit. on Con., 747.

The sixth paragraph of the charge given by the court states properly a definition of a general agency. The exception to the charge does not state the point of objection to it, nor is a counter-charge on that subject-matter asked by the plaintiff; and we need not notice an assignment which complains simply that the giving it in charge was error, without indicating the ground of objection. It may be remarked, however, that the evidence does not appear to warrant a charge based on the hypothesis that Yantes was a general agent of the plaintiff. The charge was calculated to mislead the jury.

The instructions asked to be given by the plaintiff do not aim, by their terms, to exclude payments which may have been made to Yantes in Confederate money, unless it be implied in the fourth instruction. It has been held by our supreme court that a payment made to an agent in February, 1862, in that species of currency, where the same was being used and passed in business transactions as money, was a valid payment, and that, ordinarily, an agent, to collect, could receive such notes in payment, unless forbidden by his principal. Rodgers v. Bass, 46 Tex., 506.

There is no basis in the petition whereon to support a judgment against the wife, Mrs. M. Y. Butcher, nor for ten

per cent. interest on the judgment. The defendants do not complain, however; yet, in view of further proceedings, which must be had, we deem it proper to direct attention to these errors with a view to their avoidance on another trial. The allegations of the petition, as well as the evidence, show that the note was made by H. Butcher only; the wife need not have been a party defendant, unless on account of her apparent right or claim to the land by virtue of the deed made to her; she may be properly included in the decree of foreclosure and sale of the land, but no judgment can properly be rendered against her for the debt nor costs of suit, which must, if enforced at all, be enforced against the community property of her husband and herself. The amended petition alleges that the note sued on does not express any rate of interest; the note offered in evidence does not contain any promise to pay interest; the only obligation to do so is that which the statute regulating interest creates in all written contracts to pay money.

The note, therefore, bears eight per cent. interest from the date of its maturity, and the judgment can bear no higher rate.

It is urged by the counsel for defendant in error that plaintiff, at all events, ratified the act of Yantes by long acquiescence. There is no evidence of an acquiescence by the plaintiff predicated upon his knowledge of the existence of the facts of the transaction. Yantes testified that the plaintiff never ratified the taking of the notes by him (Yantes), but that he repudiated it as soon as informed of the matter, which was in the year 1868, when he was in Texas for the first and only time since the war. Suit was brought in May of that year. "Long acquiescence, without objection, and even the silence of the principal, will in many cases amount to a conclusive presumption of the ratification of an unauthorized act; especially where such acquiescence is otherwise not to be accounted for; or such silence is either contrary to the duty of the principal, or it has a tendency to mislead the agent." Story on Agency, sec. 255. The pendency of the war from 1861 until the spring of 1865;

the disturbed condition of the country for some time afterwards; the plaintiff's residence in a distant state; the legislation and executive action in this state relating to the collection of debts, may all serve to rebut the inference which might otherwise have arisen, ordinarily, from mere silence.

Under the evidence before the jury, which legitimately might be considered under such a state of facts, without an answer by defendant setting up such a defense, and without any instructions given to the jury based upon that point, we cannot, of course, assume that the jury acted upon or considered that defense; the record does not support the argument. Such an issue does not appear to have been made, nor can it be said to be well supported by the evidence if it had been pleaded.

We are of the opinion that there was error in the judgment of the court below, and that the same ought to be reversed, and the cause remanded for further proceedings; and we shall award accordingly.

REVERSED AND REMANDED.