### JOHN D. ROACH V. MORGAN JONES, RECEIVER, ET AL.

Delivered February 12, 1898.

#### 1. Telegraph Company—Damages for Mental Anguish.

Damages are recoverable for mental anguish resulting from the fact that the burial of plaintiff's wife took place before his arrival, because of delay in the transmission of his message announcing that he would be there on the first train, as a burial at the time it occurred, in the absence of hearing from the husband, must be held a result within the contemplation of the parties to the contract of transmission.

#### 2. Same—Damages Not Too Remote.

Where plaintiff's message stating that he would come on first train was in reply to one announcing the death of. his wife and asking him to come, and if not, to answer, the inference that the funeral would have been delayed had his answer been received is not speculative so as to render the damages for delay too remote. Telegraph Co. v. Motley, 87 Texas, 38, distinguished.

APPEAL from Potter.   Tried below before Hon. H. H. WALLACE.

*Browning & Madden*, for appellant.

*Stanley, Spoonts & Thompson*, for appellees.

TARLTON, CHIEF JUSTICE.—The questions presented in this appeal arise upon the action of the court in sustaining two special exceptions urged by the appellee the Fort Worth & Denver City Railway Company, operating a telegraph line, defendant in the court below, to the petition of the appellant, plaintiff therein.

The facts disclosed by the petition are substantially as follows:

On February 14, 1896, the plaintiff was at Amarillo, Texas.   Late in the afternoon of that day his wife, Anna Roach, died at the residence of her brother, S. E. Jones, at Jacksonville, Cherokee County.   Thereafter, about 7 o'clock p. m., S. E. Jones delivered to the appellee's agent at Jacksonville a telegram addressed to the plaintiff at Amarillo, reading: "Anna is dead.   Come.   If not, answer."

The purpose of the message was to inform the plaintiff of the death of his wife, and to summon him to the funeral.   The message was delivered to the plaintiff at Amarillo about 9:30 o'clock a. m. of February 15th.   Upon its receipt, about 10 o'clock a. m. of February 15th, the plaintiff delivered to the appellee's agent at Amarillo his reply, directed to S. E. Jones at Jacksonville, Texas, reading:   "We will be there on first train;" thus informing Jones that the plaintiff and his little boy, the son of the plaintiff and his deceased wife, would be at Jacksonville on the first train reaching that point from Amarillo.

When this message was delivered to the agent the plaintiff urged an immediate and speedy delivery to the addressee Jones.   He notified the agent of the importance of the message, and of a speedy and immediate delivery therof, and asked the agent what such delivery would cost.   The latter advised the plaintiff that if he wanted an immediate delivery, it would cost 75 cents, but if not, it would cost 55 cents.   Whereupon the plaintiff paid the sum of 75 cents, stating to the agent an immediate delivery was desired.   Accordingly the agent agreed to immediately and speedily transmit the message.

The plaintiff's petition proceeds with allegations substantially as follows: "That the defendant, with full notice and knowledge that the said telegram from the said S. E. Jones to plaintiff was to inform him of the death of his wife, and to summon him to her funeral and burial, and with full notice and knowledge that the said telegram and reply thereto to the said Jones was to inform him of the coming of the plaintiff, and of his desire to be present at such burial and funeral, and have their said boy present that he might see his mother before her burial, and with full notice and knowledge that plaintiff would proceed on the first train to Jacksonville with his said boy, to be present at such funeral and burial, did carelessly and negligently, and in violation of his said

contract and duty to send the message at once and speedily deliver the same to the said S. E. Jones, fail and neglect to transmit and deliver the same message so delivered to him by the said plaintiff, and did carelessly and negligently hold and delay the same, without the knowledge and consent of the plaintiff, and without any negligence or carelessness whatever upon the part of the plaintiff, so that the same was not delivered to the said S. E. Jones for an unreasonably long time, and after the burial of the plaintiff's said wife, to wit, about noon on the 16th day of February, 1896."

Defendant held the message in its office at Amarillo from the time of its delivery until 8:40 o'clock p. m. of that day, and after the plaintiff's wife had been buried about 5 o'clock p. m. If the defendant had delivered the message as it had contracted to do, it could and would reasonably have reached Jones long prior to the funeral, which would have been postponed until after the plaintiff's arrival at Jacksonville.

The first train leaving Amarillo after the delivery of the message at about 10 o'clock a. m. of February 15th was the early morning train of February 16th. On this the plaintiff and his son left for Jacksonville, expecting Jones to have received the telegram, and to have withheld from burial the body of the plaintiff's wife until they should arrive. They reached Jacksonville about 5 o'clock a. m. February 17th, when they found that Jones had not received the message until about noon of the preceding day. Owing to the delay in the transmission, he had despaired of hearing from the plaintiff, and had caused the interment to take place about 5 p. m. of February 15th, seven hours after the delivery of the message to the agent at Amarillo. Had the message been promptly delivered, Jones could and would have delayed the burial until the arrival of the plaintiff. Jones desired to postpone the funeral until after the arrival of the plaintiff, and to that end made frequent but unavailing inquiries at the telegraph office at Jacksonville for a reply to his message.

The plaintiff sought damages, on account of mental anguish due to the negligence of the defendant, in the sum of $5000.

The court held, on the seventh special exception, that the petition failed to show that the damages claimed were in contemplation of the defendant, or that defendant could have reasonably anticipated that the delivery would cause the postponement of the burial, or that a failure in delivery would prevent postponement.

The court also held, on the eighth special exception, that the allegation that the funeral would have been postponed if the plaintiff's telegram to Jones had been delivered promptly, is speculative and conjectural, and the damages claimed for failure to deliver are too remote, as it requires the action of the independent will of Jones.

The fact of negligence is conceded, and we are restricted to a consideration of the question, what is the measure of the damages? Can mental anguish, under the facts pleaded, be taken into consideration in passing upon the extent of the damages?

Under the rule in the Hadley-Baxendale Case (9 Exch., 341), often followed in this State (Telegraph Co. v. Lynne, 87 Texas, 12), the proper solution of this question will depend upon what was reasonably within the contemplation of the parties as a result of the breach of the contract. Was the mental anguish arising out of the deprivation of the plaintiff from attendance at the funeral fairly within their contemplations as a result of the undisputed negligence? If so, the action of the court in sustaining the seventh special exception was erroneous.

The message was written for a purpose. What was that purpose? The telegram shows, and the petition alleges, that it was for the purpose of notifying Jones, the brother-in-law of the plaintiff, that the latter would leave by the first train for the place of the interment. What was the purpose of his going? His wife was dead. There could reasonably have been no other purpose actuating him in sending the message than that of securing the privilege of attending at the funeral. How could this be accomplished? Only by postponing the funeral. Hence the object of the message was to secure the postponement of the funeral, to the end that the husband might beyond peradventure secure the presence of himself and his son thereat. The company was reasonably notified of this purpose, and of the fact that if the husband should be deprived of the privilege which he thus sought to secure, he would naturally experience the pain and anguish which he sought to avert.

It is true that, in view of the former message, the agent of the company might have believed that, as the contents of the latter were but confirmatory of the line of probable conduct already indicated by Jones, the sender of the former, there was no necessity for an immediate delivery of the second message. But in entertaining this belief the agent was acting contrary to the instructions given him by the plaintiff. He was ignoring the urgency pressed upon his attention by the plaintiff, and as the sequel shows, to the great discomfiture of the plaintiff; and the company which he represented must be deemed to have taken the risk of the necessity.

The action of the court on the eighth special exception seems to be predicated upon the decision of our Supreme Court in Telegraph Company v. Motley, 87 Texas, 38, 41, in which it was held that no action would lie "where the independent action of three different individuals, widely separated from each other, must intervene between the negligence of the telegraph company and the result." This decision, we think, is clearly distinguishable from the present case. Here the result depended upon the conduct of Jones, the brother-in-law of the plaintiff, and the original actor in the entire correspondence by telegram. His was the conduct which the plaintiff sought to influence, as the defendant necessarily knew.

We are constrained to the conclusion that the learned judge erred in sustaining the two special exceptions, and hence the judgment will be reversed and the cause remanded. It is so ordered.

*Reversed and remanded.*