MORGAN JONES, RECEIVER, ET AL. V. JOHN D. ROACH.

Decided April 22, 1899.

**1. Receiver of Telegraph Company—Liability.**

In the absence or plea or proof of any limitation of his authority, a receiver of a telegraph company may be presumed to have authority to contract to transmit a message beyond his line over a connecting line, and certainly that he has authority to contract to send it to the end of his own line and there deliver it to the other line.

**2. Telegraph Company—Damages.**

Damages for failure to deliver a telegram whereby the brother of the sender's deceased wife buried her before his arrival are not speculative and remote because the burial was dependent on the will and action of another.

**3. Same—Notice of Relationship and Purpose.**

A message saying, "Annie is dead, come; if not, answer," on its face constitutes notice of the relationship of the parties named in the message, with notice of such purposes as might reasonably be inferred from the language used, including a probable desire of the addressee to attend the burial, and the mental anguish necessarily arising from an inability to do so.

**4. Same—Evidence Held Sufficient.**

In a suit to recover damages for failure to deliver a telegram because of which the sender's wife was buried by her brother before he arrived, evidence by the wife of the brother that the burial would have been postponed had the telegram been received in proper time, by the brother that he was about sure he would have deferred the burial had the telegram been so received, and by the attending physician that the body might have been preserved for several days, was sufficient to warrant a verdict finding, in effect, that the burial would have been postponed had the message been promptly delivered.

**5. Practice—Itemizing Verdict—Request.**

A failure of the charge to require the jury to itemize their verdict can not be complained of where such a charge was not requested, and the record shows no objection to the verdict made below on that account.

APPEAL from Potter. Tried below before Hon. H. W. WALLACE.

*Stanley, Spoonts & Thompson,* for appellants

*Browning & Madden,* for appellee.

CONNER, CHIEF JUSTICE.—This is an appeal from the District Court of Potter County, and the following statement of the nature and result of the suit is taken from the brief of appellant:

"Suit was brought by appellee to recover of the Fort Worth & Denver City Railway Company and Morgan Jones, its receiver, the sum of $5000 damages for mental suffering and $100 for personal expenses incurred by reason of the failure of Morgan Jones, as receiver, to promptly transmit and deliver a telegraph message sent by plaintiff from Amarillo, Texas, to S. E. Jones, Jacksonville, Texas, as follows: 'February 15, 1896.—To S. E. Jones, Jacksonville, Texas: We will be there on first train. John D. Roach.'

"It was filed for transmission on February 15, 1896, at 11:10 a. m., and not delivered until about noon of February 16, 1896, whereby plain-

tiff was prevented from being present at the burial of his wife, who had died at Jacksonville February 14th, and was there buried about 4 o'clock p. m., February 15th, and where appellee arrived February 17th.

"Defendants answered by general and special demurrers, and by general denial. On first trial demurrer sustained, but on appeal overruled and case reversed. Roach v. Jones, 44 S. W. Rep., 677. On second trial demurrers and exceptions overruled, jury trial, verdict and judgment in favor of plaintiff against both defendants for $1175 July 13, 1898."

It was proven that at and prior to February 15, 1897, the appellant the Fort Worth & Denver City Railway Company owned a continuous railway and telegraph line from and beyond Amarillo, Potter County, Texas, to Fort Worth, Texas, and that on said day said telegraph line was managed and operated by Morgan Jones as receiver duly appointed under the orders of the District Court of Tarrant County, Texas.

It was also proven that appellee's wife, Anna, for several months prior to said February 15 had been seriously sick at the home of her brother, S. E. Jones, in the town of Jacksonville, Texas; that the Western Union Telegraph Company had an office and agent in said Jacksonville, and owned and operated a continuous telegraph line from said point to the city of Fort Worth, Texas, where it connected with the telegraph line of appellant railway company. There was no proof, however, that either of appellants had any power or control over said Western Union Telegraph line, nor was the business arrangement, if any, in accordance with which telegrams over one line were transmitted over the other shown, it being shown as a fact, however, as will more fully hereinafter be set out, that a telegram from S. E. Jones to appellee was transmitted from Jacksonville to Amarillo, and appellee's reply was transmitted from Amarillo to Jacksonville, it not appearing that any other telegraph lines were operated between the two points.

The specific powers of the receiver, and the instructions and limitations, if any, relating to his management and operation of the property placed in his possession, were not shown.

It was proven that appellee's wife died about 7:40 p. m. on February 14, 1896; that S. E. Jones at about 8:30 p. m. caused the following telegram to be sent to appellee: "To John D. Roach, C/o Elmer Roach, Amarillo, Texas, via Fort Worth.—Anna is dead. Come. If not, answer. S. E. Jones."

This telegram was duly received at Amarillo and delivered to appellee at about 10 a. m. on February 15, 1896. Appellee and his little son were then on their way to Amarillo, with the intention of taking the first train to Jacksonville to see his wife. Upon receipt of the above telegram he immediately went to the agent of the receiver in Amarillo, and prepared and delivered to him for transmission the following telegram:

"To S. E. Jones, Jacksonville, Texas.—Will be there on first train. John D. Roach."

This telegram was so delivered at 11:10 a. m. of the 15th day of February, 1896, and at the time of its delivery appellee impressed upon the receiving agent the necessity of a speedy transmission, his purpose in so doing being that the burial of his wife might be delayed until his arrival in Jacksonville. To this end appellee paid 25 cents more than the usual fee for transmission, in consideration of which said receiving agent promised and agreed that the telegram should be immediately transmitted and delivered to said S. E. Jones at Jacksonville.

Appellee and his son took the first regular train out of Amarillo, at 4:20 p. m. of February 15, 1896, and by due course of travel arrived in Jacksonville at 7:40 a. m. of February 17, 1896, when to his great distress, as the evidence tends to establish, he first learned that his wife had been buried. The evidence further tended to show that the above telegram to S. E. Jones was not sent out from the Amarillo office until some time about or after 8:55 p. m. of February 15, 1896, and it was not in fact delivered to S. E. Jones until about 10 a. m. of February 16, 1896. The evidence also tended to show that after S. E. Jones sent his message to appellee he several times went to the telegraph office in Jacksonville, where he was well known, for the purpose of securing an answer, so that the burial of Mrs. Roach could be delayed in the event the appellee was coming; but not having received such answer, and having had time to do so, and despairing of hearing from him, he about 9 a. m. on February 15, 1896, caused funeral notices to issue, and afterwards, at about 4 p. m. of said day, buried the body of Mrs. Anna Roach. There was evidence also tending to show that the burial could and would have been delayed had appellee's answer been promptly received.

It is admitted that appellee gave the proper notice of his damage, and that since the institution of this suit the receiver has been discharged and appellant railway company has again received possession of its said properties under such circumstances as to render it liable herein, if the receiver was liable.

In the very able brief and oral argument of counsel for appellant, it is insisted, in effect, that the pleading and evidence does not support the judgment, in that it does not appear that the receiver was authorized to make any such contract as was sued on in this case, for the reason that the receiver's powers are such alone as are granted by the court under whose appointment he acts, and that no authority to contract to deliver a telegram beyond its own line and at a point beyond the jurisdiction of the District Court of Tarrant County was alleged or shown, and the cases of Railway v. Wentworth, 8 Texas Civil Appeals, 5, and Vault Company v. McNulta, 153 U. S., 915, are cited in support of this contention.

In the Vault Company case, supra, T. M. Cooley, as receiver, had rented certain rooms for his use from January 1, 1887, to April 30, 1891, a period of four years and four months, at a yearly rental of $10,-500, payable in monthly installments in advance of $875 each. In 1889 the receivership proceedings were terminated by the sale of the prop-

erty and the discharge of 'the receiver, he paying regularly the monthly installments of rent to July 31, 1889, and the vault company's suit was to enforce the payment of the rent as contracted for the unexpired period. The court held, no express power from the court being shown, that the receiver had no such general power as authorized him to enter into a contract involving a large annual expenditure and extending beyond the receivership proceedings so as to bind the trust fund in his hands.

In the Wentworth case, supra, Judge Neill, speaking for the Court of Civil Appeals for the Fourth District, held that an agent of the receiver of the railway company was not, by virtue of his general power as such, authorized to charge the property in his hands by contracting to ship certain sheep over other lines to Chicago, Ill., by a special route, and for damages for delay arising on such other lines of railway. Our Supreme Court, however, on writ of error in the same case, refused to pass upon the question. See Railway v. Wentworth, 28 S. W. Rep., 277.

Whatever may be the merit of the decisions quoted, and without at this time undertaking to discuss the authorities, we think it is not to be doubted that, in the absence of plea or proof of a limitation of authority or disaffirmatory act of the court, a receiver of a railway and telegraph line, under our statutes, and who is shown thereunder to have been operating them, will be presumed to have general authority to make such contracts as are usual and necessary in the proper discharge of his duties, and that the power to take possession, manage, and operate the same devolve upon him, in his official capacity, the same duties and obligations as rested upon the company before his appointment.

If so, then it has not been made to appear on the record before us that the receiver did not have power to receive and contract to transmit the telegram in question. If, for the purposes of the argument, it be assumed that the agent at Amarillo exceeded his authority in contracting to transmit said message to S. E. Jones at Jacksonville, nevertheless we may safely assume it to have been his duty, upon receipt of said telegram, to transmit it with reasonable dispatch to the end of his line, and there deliver it for transmission to the connecting line. It would seem that power and duty to so do would certainly be necessary to the profitable management of the property and in discharge of public or quasi public duties devolving upon the receiver.

In the case before us it does not appear that the delay in delivering the telegram to S. E. Jones was due to any fault or negligence of the Western Union Telegraph Company. On the contrary, the evidence leads almost irresistibly to the conclusion that the message in question remained in the office of the agent at Amarillo until some hours after the burial of Mrs. Roach, and that had it been promptly transmitted to the connecting line it would have been received by S. E. Jones in time to have delayed the funeral. We are of opinion that, under such circumstances, appellant can not avoid the consequences of the delay and negligence in the transmission of the telegram to S. E. Jones on the ground

of a want of power to make the contract in question, and we therefore overrule all assignments involving this issue.

Again, it is insisted that there can be no recovery in this case for the reason, in substance, that the petition and proof showed that delay vel non in the burial of Mrs. Roach was dependent upon the independent will of a third person, S. E. Jones, and that therefore the injury and damages are speculative and remote.

It would perhaps be a sufficient answer to this contention to refer to the decision of this court on a former appeal of this case. The same contention, in effect, was then urged by the receiver, and on this ground the court below sustained the eighth special exception to the petition. The court held that there was error in so doing, and in effect held that the damages and injuries claimed were not remote and speculative, because dependent on the will and action of S. E. Jones, distinguishing this case from the case of Telegraph Company v. Motley, 87 Texas, 38. See Roach v. Jones, 18 Texas Civ. App., 231.

This should conclude the question on this appeal, unless clearly erroneous, and we do not so think. In every case of the kind, and many of them have been before our courts for decision, the time of the burial of the deceased, with reasonable limitations, must necessarily be dependent on the will of one or more third persons. The question in such cases is and should be, had the contract for transmission and delivery been complied with, could and would the interested party have been able to reach the body before burial in fact? This is a question of fact determinable by the court or jury from all the facts and circumstances in the evidence. We therefore overrule all assignments of error raising this question.

In the tenth assignment of error it is urged that the court below erred in permitting Mrs. S. E. Jones to testify to the effect that, had the telegram in question been received in proper time, she would not have permitted the burial. We think it unquestionably true, as contended, that the telegram in question was not sufficient in terms to constitute notice to the receiver that S. E. Jones had a wife, and that it was within the reasonable contemplation of the parties that her influence in delaying the burial was relied upon. See Tel. Co. v. Carter, 85 Texas, 581.

We are nevertheless of opinion that there was no error in this. The telegram to appellee from S. E. Jones, "Anna is dead. Come. If not, answer," on its face constituted notice of the relationship of the parties named in the message, with notice of such purposes as might be reasonably inferred from the language used, including a probable desire of the addressee to attend the burial and the mental anguish naturally arising from an inability to so do. See Tel. Co. v. Carter, 85 Texas, 580; Loper v. Tel. Co., 70 Texas, 690; Tel. Co. v. Luck, 91 Texas, 180; Tel. Co. v. Edmonson, 91 Texas, 209; Tel. Co. v. Smith, 33 S. W. Rep., 742.

Within a few hours after the receipt of this message by the agents of the receiver in Amarillo, appellee delivered his answer thereto. The

two were closely connected in point of time and in relation to general purposes. From the necessary legal import of the two messages, and from the impressive manner of appellee in urging its speedy transmission, the receiving agent at Amarillo must have had notice that the central and governing purpose of appellee's answer was to delay the funeral of his wife, if possible, until he could arrive at Jacksonville. It could have been of no importance by or through whose instrumentality the burial should be delayed. It was the fact of delay that was sought. The common experience of mankind teaches that such results are often, if not more commonly, brought about by the mutual conference and agreement of relatives or others surrounding the deceased at the time of death, and it must be held that the receiver at the time of making the contract of transmission in question, had in contemplation not only appellee's desire to attend the burial of his wife, but also that upon the prompt delivery of his answer to S. E. Jones such burial would in the natural order of things be delayed through the usual agencies and influences.

If in error in this conclusion, however, we are of opinion that the action of the court below in the particular complained of was without prejudice, in that Mrs. S. E. Jones on cross-examination testified, among other things, as follows: "The body was buried about the usual time after death, and it would have been very inconvenient and unwholesome to have kept it out of the ground much longer, but we would have done so had we heard from plaintiff at the time and known that he was coming." "The burial was not delayed, because we did not know how long we would have to delay it, as we had not heard from Mr. Roach, and we had ample time." "If we had received the dispatch before burial, we would not have buried Mrs. Roach before arrival of plaintiff." "Mr. Roach was telegraphed to. We expected a reply, and if we had gotten a reply that he was coming, we would have deferred burial until after his arrival. Of course we would not have advised him to come, and have buried his wife before his arrival, had we known he was coming."

There appears to have been no objection to the introduction of this testimony, and in view thereof we are unable to say that injury to appellant's prejudice resulted from the error of the court, if any, in this particular.

It is also urged that the verdict and judgment below should be set aside, for the reason, in effect, that the evidence is insufficient to show that the burial would have been postponed had the message been transmitted as agreed, and that the verdict is excessive, in that it includes the expense of appellee and his son.

The evidence tended to contrary conclusions, but S. E. Jones testified that they had not heard from appellee, and "so we went ahead rather than longer hold the body on 'guess work;'" and again, that had he received appellee's answer in due time he was "about sure" he "would have deferred burial until after arrival of plaintiff."

The attending physician testified that he "supposed the body might have been preserved for several days, and until after plaintiff's arrival, had they gone to trouble and expense enough."

A part of Mrs. S. E. Jones, testimony has been set out, and it was shown that the weather was cold at the time, from all which it must be apparent that there was evidence supporting the verdict, and it is not so manifestly against the weight of the whole testimony as to authorize us to set aside the verdict on that ground.

Nor can we say that in fact the jury included the expenses mentioned in their verdict for damages. The court, among other things, charged the jury that, if they found for the plaintiff, they "should consider and estimate only such damages, if any, that plaintiff may have sustained by reason of such negligence, if any;" and in this connection, that if they should "find that plaintiff would have made the alleged trip to Jacksonville regardless of the sending and delivery of the message alleged to have been delayed, then you should not allow him any damages on account of his personal expenses in making such trip."

The verdict is in the gross sum of $1175. It has been suggested that the court erred in failing to require the jury to itemize their verdict, so that it could be determined whether said personal expense had been included, but there appears in the record no request to that effect, nor any objection to such failure that we can notice.

We have failed to find reversible error in the trial below, and the verdict and judgment of the District Court are accordingly in all things affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In the motion for rehearing our attention has been called to the fact that in reciting the evidence in the original opinion we were in error in stating that the evidence tended to show that "after S. E. Jones sent his message to appellee he several times went to the telegraph office in Jacksonville * * * for the purpose of securing an answer." We do not know how this oversight crept into the record, but upon this rehearing, having carefully examined the facts, we find no such evidence, although alleged, and although it was recited as an alleged fact in the opinion on the former appeal, that appeal having been decided on demurrer.

As stated in the opinion, however, the evidence did show that S. E. Jones lived within a short distance of the telegraph office in Jacksonville, and that he was well known to the employes in said office and in said town, and we do not deem the fact so erroneously stated as of controlling influence. We therefore overrule the motion for rehearing, with the correction indicated.

*Overruled.*