## SCHAFF v. STRIPLING.    (No. 2939.)

(Court of Civil Appeals of Texas. Texarkana.
July 17, 1924. Rehearing Denied
Oct. 9, 1924.)

**1. Railroads ⊕⇒210—Court may presume authority of receiver to contract with guards during strike.**

Court had right to presume, without evidence, that receiver had authority to contract with persons during strike to guard railroad bridge.

**2. Master and servant ⊕⇒3(1)—Railroad may employ guard during strike.**

Railroad had right to employ watchman or guard for bridge during strike. of employés.

**3. Principal and agent ⊕⇒94—Special agent has all implied powers necessary to effect purpose of agency.**

While special agent is only authorized to do specific acts in pursuance of particular instructions, by implication he has all necessary powers to effect purposes for which agency was created.

**4. Railroads ⊕⇒17—Agent to employ strike guards had authority to promise protection to place of duty.**

Special agent, having only authority to employ guards, had implied authority to promise one employed to guard bridge during strike that guard would be furnished to take him from station to hotel and protect him until he entered upon his duties at bridge.

**5. Master and servant ⊕⇒278(1) — Evidence held to sustain finding railroad agreed to furnish protection for bridge watchman until he entered upon duties.**

Evidence *held* sufficient to show that railroad promised one employed to guard bridge during strike to furnish guard for his protection from time he reached station on railroad's train until he entered upon his duties as guard at bridge.

**6. Principal and agent ⊕⇒116(1) — Secret instructions to agent immaterial.**

Secret instructions to agent are immaterial in action by third party against principal.

**7. Master and servant ⊕⇒278(1)—That employing agent made no promise of protection to others had no tendency to prove failure to make promise to employé in question.**

Fact that agent employing guards for railroad during strike made no promise of protection to others had no tendency to prove that he had no authority to make, or that he did not make, promise of protection to plaintiff, until he should reach bridge he was employed to guard.

**8. Damages ⊕⇒130(1)—Verdict for $8,000 for one beaten by strikers held not excessive.**

Verdict for $8,000 for one severely beaten by strikers *held* not excessive.

**9. Appeal and error ⊕⇒759 — Contention not presented by assignment of error in brief will not be considered.**

Contention will not be considered where no assignment of error presenting it is in appel-

lant's brief, under rule 32 for government of Courts of Civil Appeals.

Appeal from .District Court, Wood County; J. R. Warren, Judge.

Action by R. A. Stripling against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was for damages for personal injury suffered by appellee at the hands of a mob composed of striking employés of appellant and their sympathizers at Denison, on the night of July 11, 1922. Appellee alleged in his petition that he was employed by one Hooks, acting for appellant, at Hillsboro, to go to Denison and guard a bridge under appellant's control as receiver, and that he was induced to accept such employment by the promise of Hooks—

"that defendant would furnish a guard to meet plaintiff at the station at said city of Denison and escort plaintiff to his hotel, where he would be furnished ample protection from violence, assaults, and abuse from striking ·shopmen and their sympathizers until he was installed on duty, and armed, guarding such bridge."

Appellee alleged, further, that appellant furnished him a pass entitling him to travel on one of appellant's trains from Hillsboro to Denison; that the train he traveled on reached Denison about midnight; that appellant failed to have a guard at the station to meet him as agreed upon; that when he alighted from the train he was seized by members of a mob and beaten on his head and body; and that he was then carried by the mob to a point six miles from Denison, where he was cursed and abused, and so further beaten that "he was seriously and permanently injured in his head, back, hips, and shoulders."· Appellee alleged, further, that at the time Hooks employed him to guard the bridge appellant knew that, on account of the strike of the shopmen—

"It was exceedingly hazardous and dangerous for persons to accept employment with the defendant such as the employment offered to and accepted by the plaintiff herein, unless such persons were properly guarded and protected on arrival at said Denison, and the said defendant, its agents and .representatives, aforesaid, were well aware, and fully knew, that trains coming into the station at Denison at the time in question were picketed by striking shopmen, and that persons employed by the defendant at the time in question to perform such services as this plaintiff was hired to perform, as aforesaid, would be subject to violence and serious injury by such striking shopmen and their sympathizers at said town of Denison, unless properly guarded and protected, but that notwithstanding all of which, and notwithstanding the promises made by defendant, its agents and representatives, as afore-

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said, to furnish protection to this plaintiff, as aforesaid, and wholly unmindful of its duty and obligation to this plaintiff, the defendant, its agents and representatives aforesaid, carelessly and negligently failed and refused to furnish to this plaintiff the protection they promised him as aforesaid, and as they were in duty bound to furnish him."

Appellant's answer to the petition consisted of a general denial, a denial that "any agent or employé of his was authorized to promise or assure" appellee "that he would be met at Denison by guards and safely guarded and protected," a plea alleging the fact to be, if appellee was employed by Hooks, that "the purpose of his employment was that he might give protection, and not receive it," and a plea as follows:

"Defendant says that a strike of his employés belonging to what are commonly called the Federated Shop Crafts, was called for 10 a. m., July 1, 1922, and that practically all employés of that class along his lines, of whom there were about 1,000 at Denison, obeyed the strike order. These employés not only left the service, but they undertook, by picketing, threats, violence, and other means, to prevent other employés from entering defendant's service to take their places, and committed various acts intended to interfere with and hamper defendant in the operation of his lines of railroad and in the discharge of his duties as receiver under the orders of the United States District Court for the Northern District of Texas. While strike leaders, through the press and otherwise, proclaimed that there would be no violence, defendant deemed it prudent to provide guards to protect employés who did the work formerly done by the strikers and to protect the railroad premises and equipment. No such protection, at least to an adequate degree, could be obtained from the local or state authorities, and it became necessary for defendant at once to employ private guards to furnish the protection, until arrangement could be made to secure protection through deputy United States marshals, state rangers, and state troops. Defendant made a diligent effort to procure full and adequate protection from all available sources, but he was unable to secure any government officers or forces, either state or federal, for this purpose prior to the alleged assault upon plaintiff. If plaintiff was employed as he alleges, the very purpose of his employment was that he might assist others similarly employed in giving protection to employés and property necessary to permit the safe and efficient operation of the railroad."

It appeared without dispute in the testimony heard at the trial that appellee was assaulted by a mob when he alighted from the train at Denison, and that he was then forcibly taken to a point several miles from the city, where he was brutally beaten with a rope. The testimony was conflicting as to whether Hooks promised appellee that defendant would have a guard to meet him at Denison and protect him, as charged in appellee's petition and testified to by him. Hooks testified he made no such promise.

Special issues as follows were submitted to the jury:

"Question 1. Did the agent of defendant employ plaintiff to go to Denison to guard a bridge belonging to said defendant?

"Question 2. Did the agent of defendant who employed plaintiff promise him that the defendant would furnish a guard to meet him at the station at Denison and escort him to his hotel, where he would be furnished protection from violence, assaults, and abuse from striking shopmen and their sympathizers, until he was installed on duty and armed?

"Question 3. Was the defendant guilty of negligence (as that term is hereinbefore defined) in failing to furnish protection from violence to plaintiff on his arrival at Denison?

"Question 4. Was the negligence of defendant the proximate cause of plaintiff's injuries on the occasion in question?

"Question 5. Did the plaintiff assume the risk of injury on the occasion in question?

"Question 6. What amount of damages, if any, do you find the plaintiff has sustained by reason of his injuries, if any?"

The jury answered questions 1 and 2 in the affirmative, and, having been told by the court that if they so answered said questions they need not answer questions 3, 4, and 5, they made no answer to those questions. They answered question 6 that appellee had sustained damages in the sum of $8,000.

The appeal is from a judgment in appellee's favor for the sum found by the jury.

Chas. C. Huff, of Dallas, McMahon & Dohoney, of Greenville, and Jones & Jones, of Mineola, for appellant.

Butler, Price & Maynor, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] Appellant insists the judgment was not warranted because, he says, "there was no evidence showing or tending to show" that he was authorized by the order of the court appointing him receiver to make the contract in question. But we think the trial court had a right to presume that appellant, because he was receiver, had authority to contract with appellee to watch or guard the bridge forming a part of the roadbed of the line of railway he was operating, and that it was of no importance, therefore, that there was no direct testimony showing that he possessed such authority. There is no doubt about the railway company having a right to employ such a watchman or guard, had its property not been in the hands of the receiver, and there is no doubt, if it would have had such a right, that appellant, having charge of its property as receiver, also had such a right. 1 Elliott on Railroads, §§ 566, 576; Jones v. Roach, 21 Tex. Civ. App. 301, 51 S. W. 549; Trust Co. v. Ry. Co., 120 Fed. 875, 57 C. C. A. 533. It was appellant's duty as receiver to preserve the property of the railway company "that the value

of the railroad as a whole," quoting from section 566 of the work cited above—

"may not be impaired, and that the rights of the public to have it kept in operation as a public highway may not be infringed. To this end he is empowered to hire and pay workmen, agents, and all necessary assistants, to make contracts for the carriage of passengers and freight, and to do such other acts as are necessary in maintaining the railroad as a going concern. In the management of such a complicated business as the operation of a railroad a large discretion is necessarily given to a receiver."

And, said the authors of the work in section 576:

"It accords with sound principle and reason that a receiver exercising the franchise of a railroad company shall be held amenable, in his official capacity, to substantially the same rules of liability that are applicable to the company while it exercises the same powers of operating the road."

It appeared without dispute in the testimony that Hooks was appellant's agent to employ persons to go to Denison and guard property under appellant's control as receiver. But appellant insists it did not appear, as it must to warrant the recovery had against him, that in employing such persons Hooks had authority to bind him (appellant) by a promise that he would provide protection for them against assaults by his striking employés. The contention seems to be predicated on the fact that Hooks was a special agent (2 C. J. 659), and the view that appellee therefore was bound to prove, and did not, that he (Hooks) was expressly authorized by appellant to make such a promise.

[3] While it is true, as appellant insists it is, that "a special agent is only authorized to do specific acts in pursuance of particular instructions, or with restrictions necessarily implied from the act to be done," it is also true that such an agent, like a general agent, by implication has "all such powers as are necessary and proper as a means of effectuating the purposes for which the agency was created." 21 R. C. L. 853.

"As a general rule of law," said Mr. Skyles, the author of the article on "Agency" in 2 C. J., at page 578, "every grant of power implies and carries with it, as an incident, authority to do whatever acts, or use whatever means are reasonably necessary and proper to the accomplishment of the purpose for which the agency was created, unless the inference of such power is expressly excluded by the instrument creating the agency or by circumstances of the business to which the agency relates. Such incidental authority includes all acts and things which are connected with and essential to the business in hand; it is measured by the nature and necessities of the purpose to be accomplished and is prima facie coextensive with the business entrusted to the agent's care. The means adopted, however, should be such as are most usual, such means indeed as are ordinarily used by prudent persons in doing similar business. This rule applies both to general and special agents, unless the manner of doing the particular act is prescribed by the power."

And the same writer says, at page 586 of the same volume of Corpus Juris:

"A special authority, like a general authority, confers by implication all powers necessary for or incident to its proper execution, and acts done by a special agent while acting within the scope of his authority are as binding on the principal as those of a general agent."

And see 1 Clark & Skyles on Agency, pp. 476, 495, 498, 526 and 665; McAlpin v. Cassidy, 17 Tex. 449; Birge-Forbes Co. v. Ry, Co., 53 Tex. Civ. App. 55, 115 S. W. 333.

[4, 5] In support of his contention appellant argues that the promise attributed to Hooks was an "extraordinary and unusual" one, which the court did not have a right to treat as within the power of Hooks to make. As we understand appellant, the argument is on the assumption that the promise was "to guard a guard." We do not so understand appellee's testimony as a witness. His account of what passed between him and Hooks was as follows:

"I asked Mr. Hooks if he wanted to employ anybody to work for the railroad, and he said he was wanting to employ them. He told me the kind of work that he wanted done; that is, he said he wanted to guard a bridge. The purpose for which he said he wanted to guard the bridge was to prevent it from burning up by fire. He told me what he would pay me a day for that service; he said he would pay me $5 a day and all expenses, and furnish me a pass from Hillsboro to Denison and a guard for protection. I asked him what he wanted with guards, and he asked me, didn't I know that there was a strike on up there. I told him, 'No, sir;' and I told him that I did not want to go if there was a strike on. He said he would guarantee me protection. I told him I would go if he guaranteed me protection; that I would not go if he did not guarantee me protection. He said there would be a guard then at the depot at Denison to take me to the hotel and from the hotel to the bridge where I was to guard the next day; that is, to guard a bridge on the Katy Railroad. * * * Mr. Hooks said he would get me there to Denison by giving me a pass over the Katy Railroad from Hillsboro to Denison. * * * I got the pass in Hillsboro from the ticket agent. * * * When Mr. Hooks told me there at Hillsboro that he wanted me to go up there to Denison to guard a bridge against fire he told me that there would be a guard there to meet me. * * * I said, 'What would you want with guards?' He said, 'Didn't you know there was a strike on up there?' And I told him, 'No, sir.' He told me that he would have guards to meet me at the train. I told him that I would not go if there was any trouble

up there, or danger, and he said he would guarantee me protection from harm or danger; that there would not be harm from anything. He told me how they had prepared up there to protect me and what they had done, and it was just by guards. He said they already had the guards there to protect me for that purpose. I relied on his promise that there would be guards there to protect me, I took his word that he was telling me the truth about it. I wouldn't have went up there if I had known that he wouldn't have guards there to protect me."

Fairly construed, we think the testimony set out showed the promise to be to guard and protect appellee from the strikers until he entered upon his duties as a guard at the bridge, and not to guard and protect him after he entered upon the discharge of those duties. If that was the promise, it was not, we think, an extraordinary one in the light of the circumstances of the case shown by the testimony, including the part of appellant's answer set out in the statement above, admitted as evidence, and it was within the incidental and implied power of Hooks, as an agent to employ persons to go to Denison to act as guards, to make it.

[6, 7] Appellant complains because the court refused to permit him to prove by Hooks that he was not "instructed or authorized to employ any one to go to Denison under the name or title of guard, but in fact to be guarded by others." There is no merit in the complaint. It was of no importance what appellant's secret instructions to Hooks were, if, as we have determined was the case, the trial court had a right to say that authority to make the promise to appellee in question was, under the circumstances shown by the testimony, incidental to the authority conferred upon him to employ persons to go to Denison to act as guards. And we think there is no merit in the complaint based on the refusal of the court to permit appellant to prove by the witnesses Wilson, Hagood, and Johnson that at about the same time Hooks employed appellee to go to Denison he employed them to go there as watchmen or guards, and did not promise them, quoting from the bill of exceptions, "that they would be furnished with protection against the strikers upon arrival at Denison and until they went on duty or any other time." Plainly, we think, the fact that Hooks made no such promise to the witnesses named would have no tendency to prove either that he had no authority to make or that he did not make the promise in question to appellee.

[8] The contention that the verdict and judgment were for an excessive amount is overruled. As we view the record, there was testimony the jury had a right to believe which authorized them to find as they did with reference to the amount of the damages.

[9] The contention remaining undisposed of, to wit, that the trial court erred when he admitted as evidence the part of appellant's answer in the case set out in the statement above, over his objection, has not been considered and will not be determined, because no assignment of error presenting it is in appellant's brief. Rule 32 for the government of Courts of Civil Appeals; Seby v. Lumber Co., 259 S. W. 1093.

The judgment is affirmed.