J. I. CASE THRESHING MACH. CO. v. MORGAN et al. (No. 708.)

(Court of Civil Appeals of Texas. El Paso. May 25, 1917.)

1. PRINCIPAL AND AGENT ⊜147(2)—THIRD PERSON'S DUTY TO ASCERTAIN AGENT'S AUTHORITY.

A third person dealing with an agent is bound at his peril to ascertain the fact of agency and extent of agent's authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 529, 531, 533.]

2. PRINCIPAL AND AGENT ⊜19, 119(1)—AGENT'S AUTHORITY—BURDEN OF PROOF.

Where the fact of agency or extent of agent's authority is controverted, a third person relying thereon has the burden of proving such facts.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 36, 391, 393, 398, 399, 401.]

3. PRINCIPAL AND AGENT ⊜124(3)—AGENT'S APPARENT AUTHORITY—QUESTION FOR JURY.

Evidence held sufficient to raise a question of fact as to agent's apparent or implied authority to agree to deliver threshing machine parts within a specified time.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 724.]

4. PRINCIPAL AND AGENT ⊜194(2)—INSTRUCTIONS—AGENT'S AUTHORITY.

Evidence conclusively showing that agent had no express authority to agree to deliver threshing machine parts within specified time, the court should have given a correct special

charge submitting the question of implied authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 728, 729.]

5. PRINCIPAL AND AGENT ☞137(1)—ESTOPPEL TO DENY AGENT'S AUTHORITY.

One claiming a principal's estoppel to deny agent's authority must base such authority upon facts, be actually misled by principal's conduct or representations, and must have exercised due diligence to ascertain the truth.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 492, 494.]

6. SALES ☞418(16) — BUYER'S ACTION FOR DELAYED DELIVERY—SPECIAL DAMAGES.

In action for failure to deliver threshing machine parts within specified time, plaintiff could recover damages naturally arising according to the usual course of things from such breach of the contract itself, or such as may reasonably be supposed to have been within both parties' contemplation at the time contract was executed, as the probable result of a breach; hence, if seller knew that the buyer needed such parts for a particular purpose, buyer could recover damages resulting from failure to receive them within the specified time.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1197.]

7. TRIAL ☞252(4) — INSTRUCTIONS — ISSUES NOT RAISED BY EVIDENCE.

Where there was no evidence raising issue of ratification of an agent's act, it was erroneous to instruct the jury as to such issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 599.]

Appeal from Comanche County Court; J. H. McMillan, Judge.

Suit by Jeff Morgan and another against the J. I. Case Threshing Machine Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded for new trial.

Spence & Haven, of Dallas, for appellant. H. N. Goodson, of Comanche, for appellees.

HARPER, C. J. This is a suit for damages for failure to ship certain parts for a threshing machine, in accordance with an alleged contract, brought by Jeff Morgan and Joe Chrestman against the J. I. Case Threshing Machine Company. In substance, plaintiffs allege that they purchased from defendant, through its agent, the extras, with the understanding and agreement that they would be shipped on June 12th, but that through the negligence of defendant they were not shipped as agreed, that they did not get them for several days after they should have arrived; as a consequence, they lost their contracts to thresh certain wheat and oats and the profits, etc. The defendant denied that the employé, who sold the parts of machinery, had authority to contract to deliver machinery at any particular date so as to bind it. Further pleaded that it had no such notice of special damages as to charge it therefor. Tried with jury, and upon the verdict judgment was entered for $400, from which it comes to this court for revision.

The evidence showed that plaintiffs were the owners of a threshing machine. It being in need of repairs, they went in person to the defendant's place of business in Dallas for the purpose of purchasing same, and made known their wants to defendant's manager. He took them to the repair clerk and introduced them to him. Whereupon they made known what parts of machinery they desired to purchase. Plaintiff Morgan detailed what happened as follows:

"The repairman asked us what we wanted. I said we want a sieve for a threshing machine. He said, 'we have them in stock.' I said, 'I want to look at it.' He took us upstairs, and we gave him an order, but can't recall everything we ordered. I told him we were in a hurry, and wanted to know if he had any of those things we wanted, and he answered that he did, and we asked him if he could ship them right out. He said he could. Mr. Lemon (manager) then came up and asked: 'Did you get fixed up?' We told him we did, and the repairman said, 'Good.' We told him that the goods were to come out to-morrow morning, and we left with the understanding that the goods were to come the next morning by express, and he said, 'I know you are ready and the goods will go forward in the morning by express.' That was the contract. When I was there at the repair clerk's desk and Mr. Lemon asked us if I got fixed up, Mr. Dale was in 8 or 10 feet from us. We were on one side of the desk, and the repairman was on the other. In talking with Mr. Dale, the repairman, about getting these extras out Saturday morning, I told him we came down there to buy those repairs because our trade demanded it, and we come in person because we wanted to be sure to get them and wanted to see what we were buying and we was going to start and had to get busy right now. I explained it to him and made him understand. I told him we was bound to start on that date, and said: 'If you get them out in the morning, I am sure they will get there in time.' Mr. Dale said: 'I will sure get them out.' I told him that we was making calculations to start threshing on Tuesday or Wednesday, and that was why we wanted the order rushed. We were talking on Friday, the 11th, and next day, Saturday, the 12th. I told him that we had contracts that were pushing us. Mr. Dale said he had these repairs in the Dallas house. We looked for them, and I asked him if he had them in stock, and he said he did; that it was all there."

The manager of the defendant company testified that Dale had no authority to make the contract binding it to a definite day for shipment, and Dale testified that he had not been given such authority. And there is no evidence to the contrary as to express authority.

The first proposition urged by appellant is that the undisputed evidence shows that Dale was not authorized expressly or impliedly to bind the company to carry out the contract charged; therefore the court erred in refusing to give peremptory instruction for defendant.

[1, 2] The rule is that:

"A party dealing with an agent is bound, at his peril, to ascertain, not only the fact of the agency, but the extent of the agent's powers, and, in case either is controverted, the burden of proof is upon him to establish it." Overton v. First Texas State Ins. Co., 189 S. W. 514.

[3] We are of the opinion that there is sufficient evidence to raise a question of fact for the jury upon the question of apparent or implied authority. Therefore the court did not err in refusing the instruction upon that ground.

[4] The fifth assignment urges that the court erred in refusing to give a special charge requested upon the question of apparent authority of the agent. The special charge requested is a substantially correct charge upon the law and the facts of this record, and should have been given. The evidence being conclusive that Dale had no express authority to bind the defendant by the contract alleged, it becomes a question of fact for the jury whether he had apparent authority governed by proper instructions.

[5] The rule adopted in this state is laid down in Cleveland & Sons v. Houston Sporting Goods Store, 166 S. W. 912:

"The doctrine of apparent authority to act as an agent is founded upon the law of estoppel, but in every case in order to create an estoppel the authority to act must be based upon facts. * * * The doctrine * * * does not apply unless the person dealing with the * * * agent * * * was misled by * * * the representation or conduct of the * * * principal. He must have been actually misled and induced to act to his prejudice by reason of the principal's conduct; he having on his part exercised due diligence to ascertain the truth"— citing Clark & Skyles, Agency, p. 149.

Upon this question, the court gave the following instruction:

"Should you find from the evidence that plaintiffs made the contract for the delivery of said extras, alleged by them with H. M. Dale, such contract would not be binding on defendant, unless you find from a preponderance of the evidence that said H. M. Dale was the agent of defendant, and as such agent had authority from defendant to make such contracts; and, unless you find that said H. M. Dale was the agent for defendant and acting within the scope of his authority in making the contract alleged in plaintiff's petition (if he did make such contract), you will find for the defendant, unless you find that defendant is estopped from denying such agency under the instruction hereinafter given you. In this connection, you are instructed that the undisputed testimony shows that W. C. Lemon is and was the general manager for defendant at Dallas, Tex., and if you find that said W. C. Lemon held out or represented to plaintiffs that H. M. Dale was agent for defendant with authority to make shipping contracts like the one alleged in plaintiff's petition, or if you find that said H. M. Dale, with the knowledge of defendant or its said general manager, was accustomed to making such contracts, or if you find that after said contract was made between plaintiffs and H. M. Dale (if they did make such contract) the same was ratified by said general manager, then I instruct you that, in either of these events, defendant is estopped from denying the agency of said H. M. Dale."

It will be noted that the charge given does not cover the question of diligence of plaintiffs to ascertain the truth, nor that of whether they were misled by the acts of defendant to their prejudice.

[6] By other assignments and propositions it is urged that:

"The lost profits which the plaintiffs sought to recover as damages in this case, because of the alleged violation of the contract had with Dale, were such as not to be recoverable in law. The alleged contract with Dale was not made by him in contemplation of profits which appellees would make from threshing the grain of any of their customers, because they did not make known to Dale that they had contracts to thresh grain for any one, or that they would make a profit in threshing grain for anyone. Therefore the profits, if any, which they might have made from threshing grain for their patrons, were too speculative, remote, and contingent to be recoverable in law."

In view of another trial, we think it proper to add that the rule for the measure of damages in case like this, adopted by the courts of this state, is that laid down in Hadley v. Baxendale, 9 Exch. 353; Pac. Ex. Co. v. Darnell Bros., 62 Tex. 640.

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendants and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would generally arise, and in the great multitude of cases not affected by any special circumstances from such a breach of contract."

If, upon another trial, the plaintiffs by evidence bring their case within the above rule with respect to damages, the questions should be submitted to the jury by appropriate instructions, which was not done upon the former trial.

[7] By the tenth, it is urged that the court erred in giving charge upon ratification because there was no evidence raising the issue. This is well taken.

The other assignments raise questions largely based upon the sufficiency of the evidence to support issues submitted by the court and are overruled, because we believe what is said above sufficiently indicates the tests to be applied upon another trial, so, if errors, not likely to occur upon another trial.

For the reasons indicated, the cause is reversed and remanded for a new trial.