## DE LA O v. CONSOLIDATED KANSAS CITY SMELTING & REFINING CO.
### (No. 829.)

(Court of Civil Appeals of Texas. El Paso. April 11, 1918. Rehearing Denied May 9, 1918.)

1. ESTOPPEL ⬥83(2)—TITLE TO CONFISCATED PROPERTY.

Where plaintiff and defendant smelter agreed that defendant was to receive, smelt, and pay for ore coming from plaintiff's mines only, and would not receive ore title to which depended upon confiscation, plaintiff, who, through his agent, delivered as his own, to defendant, ore coming from the mine of another company, would be estopped to set up that such company was deprived of title by confiscation of the Mexican government, so that defendant got good title, defendant having paid such company for ore.

2. PRINCIPAL AND AGENT ⬥25(1)—ESTOPPEL TO DENY AGENCY.

A father who placed his son, who was in fact his agent for some purposes, in a position to deceive defendants, would be estopped to deny the agency, whether he had in fact authorized son or not, defendants having in fact been deceived.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. EVIDENCE ☞26—JUDICIAL NOTICE—MILITARY GOVERNMENT IN MEXICO.

The Court of Appeals will take judicial notice that Carranza was the head of a military government in northern Mexico at the time the ores in question were imported, that such government could seize and sell property for military purposes, and that by such sale by its authorized officers title would pass to the purchaser.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Manuel de la O against the Consolidated Kansas City Smelting & Refining Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Lea, McGrady & Thomason, of El Paso, for appellant. Davis & Goggin and Del W. Harrington, all of El Paso, for appellee.

HARPER, C. J. Appellant sued appellee (called the Smelter) for $5,784.50, alleged to be a balance due him for ores delivered to be smelted, appellant to receive the value thereof, less smelting charges, etc., which had been converted by the Smelter.

The Smelter answered that appellant, being the owner of mines in the republic of Mexico, had from time to time for a long time been consigning ores to it for treatment, and that about September 29, 1914, appellant (Manuel de la O) became ill, and thereupon authorized his son, Alexander, to represent him in all such matters; that, pursuant to this understanding, Alexander imported the ores in question in his own name, represented them to be his father's, and the Smelter, dealing with him only as the agent of his father, received and paid for the ores, believing they were the father's property, but afterwards discovered that they were the property of a mining company, which we will designate the Ramas Company; that the plaintiff received the money and appropriated it to his own use, notwithstanding that the ores were not his property, but stolen from the said mining company; and, further, that upon discovering that the ores were stolen from the Ramas Company, it paid the latter company the value thereof.

To this appellant replied that the ores were confiscated by the Mexican government; that the title of the mining company was thus divested; that Alexander de la O, in delivering the ores to the Smelter, was not acting as the agent of his father, but as the agent of the owner under the confiscation; that plaintiff did not get the proceeds, etc.

To the latter the Smelter replied that plaintiff was estopped to set up confiscation, because, knowing that the Smelter would not smelt confiscated ores, he represented them to be his, and it received same relying upon such misrepresentations; and, further, was estopped to deny his son's agency, etc.

Verdict and judgment for defendant under the following special issues and answers:

Question No. 1. Do you find from a preponderance of the evidence that it was in substance, either expressly or impliedly, agreed between defendant and plaintiff, Manuel de la O, that defendant was only to receive, smelt, and pay for the ore coming from the mines of said plaintiff, and would not receive any ore from him the title to which depended upon confiscation? Answer. Yes.

Question No. 2. Do you find from a preponderance of the evidence that the ore described as lots Nos. 3362 and 3364, imported in the name of Alejandro de la O, was delivered to the defendant in pursuance of a conspiracy between plaintiff, Manuel de la O, and Alejandro de la O, to induce defendant to believe that said ore was the property of the plaintiff, Manuel de la O? Answer. No.

Question No. 5. Do you find from a preponderance of the evidence that, at the time the defendant received lots Nos. 3362 and 3364, Alejandro de la O was the agent of plaintiff, Manuel de la O, in reference to the importation of ores to the smelter of defendant? Answer. Yes.

Question No. 6. Do you find from a preponderance of the evidence that Alejandro de la O was authorized by plaintiff, Manuel de la O, to import ores for Manuel de la O in his own name (that is, the name of Alejandro de la O), and in his own name collect the money therefor? Answer. No.

Question No. 7. Do you find from a preponderance of the evidence that it was in the apparent scope of the authority of the said Alejandro de la O, as an agent of plaintiff, Manuel de la O, if he was such agent, to import the ore of Manuel de la O in his own name (that is, in the name of Alejandro de la O), and in his own name collect payment therefor? Answer. Yes.

Question No. 8. Did the defendant, relying upon such apparent authority of Alejandro de la O, deal with the said Alejandro with reference to said lots of ore, 3362 and 3364, and receive and pay for same?

Question No. 9. Do you find from a preponderance of the evidence that prior to the delivery of said two lots of ore, Nos. 3362 and 3364, to defendant, that one of the factions in the republic of Mexico that was seeking by military force to obtain control of the government of said republic, to wit, that faction commonly called Constitutionalists, or Carranzaistas, was in military control and occupation of that portion of the state of Chihuahua wherein is located the group of mines known as El Cigarrerro? Answer. Yes.

Question No. 10. Do you find from a preponderance of the evidence that the officers or agents of said military government seized, for the use and benefit of said military government, the ores of the El Cigarrerro mine, or that portion of the ores of said mine comprising lots Nos. 3362 and 3364? Answer. Yes.

Special Issue No. 1 Requested by Defendant. Did the said Alejandro de la O represent to the defendant that in delivering said ores to it, on or about the 29th day of September, 1914, he was doing so as the agent of his father, Manuel de la O, and for his said father? Answer: Yes.

Special Issue No. 2 Requested by Defendant. Did the said Manuel de la O authorize the said Alejandro de la O, his son, to act as his agent in the delivery of said ores, delivered on or about the 29th day of September, 1914 (and especially said lots Nos. 3362 and 3364), to the defendant, the Smelter? Answer. No.

Special Issue No. 3 Requested by Defendant. Did the plaintiff, Manuel de la O, ratify the acts of his said son, Alejandro de la O, in delivering said ores to the Smelter as the ores of him, the said Manuel de la O? Answer. No.

Upon motion of plaintiff for findings of facts upon which the court based the judgment, the following were filed:

(1) All facts found in the verdict of the jury are hereby found in accordance therewith.

(2) That the defendant did not, with the agreement, consent, or acquiescence of plaintiff, pay to Compania Minera Ygnacio Rodriquez Ramos, S. A., the sum of $5,784.50, or any other sum; that the said sum of $5,784.50 withheld by defendant from plaintiff, and paid by it to said above-named Compania Minera Ygnacio Rodriquez Ramos, S. A., was the proceeds from ore belonging to plaintiff, smelted by defendant under and in conformity to the contract found by the verdict to exist between plaintiff and defendant.

(3) That the reasonable market value of lots of ore 3362 and 3364 at the time same was received by defendant was the sum of $5,784.50.

(4) That at the time Alejandro de la O delivered said lots 3362 and 3364 to defendant, representing them to be the property of his father, the plaintiff did not know that said Alejandro de la O was representing to the defendant that the ore belonged to plaintiff; that, as found by the jury, Alejandro de la O was acting in the apparent scope of his authority in so selling said ore, and the title thereto failed, and defendant was legally liable to pay same as it did.

(5) That such civil government as there was in the state of Chihuahua at the times involved in this suit derived its authority from, was the creature of, and subservient to, the military government.

(6) That Alejandro de la O imported said lots of ore 3362 and 3364 as the servant of, and upon the order of, what is designated as the commercial agency; that said commercial agency was a department or branch of said military government, and was located in Juarez, Mexico.

(7) That the extent and nature of the authority of the officer attempting to make the confiscation alleged in this case does not appear from the evidence.

[1] The first assignment urges that the trial court erred in its judgment because, under the undisputed evidence and the verdict of the jury, plaintiff is not liable to refund the money. The proposition is that, the ore having been confiscated by military authorities for the maintenance of the Carranza government, the Ramas Company lost title, and, the ore having been sold to the defendant by said military authorities after seizure and confiscation, it received good title, and therefore is not liable to the Ramas Company.

Starting with the admission and the finding of the jury that it was agreed, expressly or impliedly, between the parties, that the Smelter was only to receive, smelt, and pay for ore coming from the mines of plaintiff, and would not receive ore the title to which depended upon confiscation, and the further agreement between counsel that the ore came from the mine of the Ramas Company, and was owned by it, and the further finding that Alexander de la O was the agent of his father at the time the ore in question was delivered, and the further finding that in shipping the ore in his (Alexander's) own name, and delivering them to the Smelter as his father's ore, he was acting within the apparent scope of his authority as agent, and the Smelter, having received the ore as the father's property, and that but for the belief that it was the father's property, would not have received it, did not the court render the proper judgment, even though it be conceded that the Smelter got good title under the confiscation, upon the principle of estoppel as urged by appellee?

The grounds of estoppel relied on were that Manuel de la O agreed with the Smelter that no ores but those from his mine would be shipped, because the Smelter was not willing to be exposed to claims and subject to suits of third parties on account of seizures and confiscations of stolen ores; so when the ores in question arrived at the Smelter in the name of the son, Alexander, the manager of the Smelter made inquiry as to the ownership, and Alexander said it belonged to his father, who was sick and unable to personally attend to the matter, whereupon he was told that it was necessary for him to have something in writing to that effect, for the reason that the Smelting Company, in order to guard against getting ores that had been stolen or confiscated in Mexico, must exercise great care; that there was nothing on file to show any arrangement with him (Alexander), so it was necessary for him to show that he was acting for his father, and that eventually a letter was brought, evidently signed by the father, stating, in substance, that he was ill in a hospital, and that his son, Alexander, was authorized to act for him, whereupon the ores were taken and smelted and paid for. When the manager of the Smelter discovered that the ores did not belong to the father, but to another, he sent for the father, plaintiff, and confronted him with the information, and it was admitted that the ore was not from his mine, and upon request returned a check which had been given to be canceled, and a new one issued for the amount then due, less the value of the ore in controversy.

The Smelter, under such facts, had a lawful contract providing against the receipt of ore the title to which was in question; that, by the false representations of Alexander de la O, the agent of plaintiff, acting as such, or within the apparent scope of his authority, the Smelter was induced to take ore the title to which is in question, and against which the latter had expressly protected itself by agreement. Appellant must therefore be held to be estopped from setting up title in a third party.

[2] In this connection appellant urges that, since the Smelter knew that the son had no authority to act as agent for ore other than such as came from his own mine, he would not be liable for ores shipped by his son in

his own name, even though he was acting within the apparent scope of his authority. We think the law is to the contrary. The father, having placed his son, who was in fact his agent for some purposes, in a position to deceive the Smelter agents, and they having in fact been deceived, he is estopped to deny the agency, whether he had in fact authorized the son to so act or not. Renick v. Brook, 190 S. W. 641; Threshing Machine Co. v. Morgan, 195 S. W. 922.

[3] However, we do not concede that there was in fact a valid confiscation of the ore in question by the Carranza authorities. Under the holding by the Supreme Court of the United States, we would take judicial knowledge of the fact that Carranza was the head of a military government in northern Mexico at the time these ores were imported; that such government could seize and sell property for military purposes, and that by any such sale, by its authorized officers, title would pass to purchaser; but we concur in the finding of the trial court that the record here does not distinctly show that the officer or agent making the seizure and sale of the ore in question were duly authorized to do so. So, for this reason, appellant's contention cannot be sustained.

But the question of litigation of title is just what the Smelter has by its contract expressly protected itself against, and by this agreement appellant has pledged himself not to place appellee in the position of being compelled to litigate in the courts the question of title to the ores sold to it, and, having done so, must be held to be estopped from urging that title is in another; for, though we should hold that title passed by the seizure and sale in evidence, the Smelter would still be liable to suit in Mexico over the value of the ore in question, and for this reason it must be held to be protected from this and other litigation over the title to this ore by the provisions of its agreement.

There are other assignments and propositions in appellant's brief, some of which, though not specifically mentioned, are disposed of by the observations above, and the others are overruled because considered without merit.

Affirmed.